*535 OPINION OF THE COURT
Hancock, Jr., J.
Where an accomplice to a robbery acts solely as the getaway driver and participates in neither the threat of force, its use, nor the taking of property, and is not in the immediate vicinity of the robbery or so positioned as to be capable of rendering immediate assistance to the robber, he is not "another person actually present” within the meaning of the aggravating accomplice factor of robbery, second degree (Penal Law § 160.10 [1]).
I
Defendant appeals from the affirmance of his conviction, after a jury trial, of robbery, second degree, arising from the holdup of a bank.[1] His chief contention is that the trial court should have granted his dismissal motion, made at the close of the People’s case, upon the ground that there was insufficient proof, as a matter of law, to show that he committed the robbery while "aided by another person actually present”. A divided Appellate Division affirmed, holding, in pertinent part, that a getaway driver "shown to be parked approximately 15 feet from the bank at the time of the robbery” could be considered "actually present” at the robbery, inasmuch as the history of the Penal Law "suggests an elimination” of the distinction between actual and "constructive” presence (123 AD2d 446, 447). For reasons which follow, we agree with the view of the dissenter at the Appellate Division that both the legislative history and the plain meaning of the phrase "actually present” rule out the interpretation that it could include *536 a person who was only constructively present at the crime scene.
The question before us is whether aid to a robber by a person who, unseen by and unknown to the victims, is waiting outside in an automobile is a circumstance which the Legislature intended should raise what would otherwise be robbery in the third degree to the crime of aggravated robbery in the second degree. The answer entails ascertaining what conduct or aggravating circumstances the Legislature envisioned as being within the term "aided by another person actually present” (Penal Law § 160.10 [1]). More precisely, we must determine whether the Legislature intended that the added presence of another person, under the circumstances in this case, constitutes a degree of seriousness commensurate with "causing] physical injury” to a nonparticipant (§ 160.10 [2] [a]) or "displaying] what appears to be a * * * firearm” (§ 160.10 [2] [b]) so as to warrant elevating the crime to a class C felony. From the plain meaning of the statutory language, the relevant legislative history, and, particularly, the term’s underlying purpose and sense as part of the robbery article of the Penal Law, we conclude that the Legislature did not so intend.
II
The People’s sole witness to defendant’s actions at the robbery was a bank teller. She testified that, on July 3, 1981 at about 1:30 in the afternoon, defendant came to her window at the branch of Manufacturers Hanover Bank at the intersection of Jamaica Avenue and Hollis Court Boulevard in Queens County. He handed her a note which read: "Important. Follow to the letter. Smile as you work. I am a soldier for the People’s Court, Black Liberation Party, trained to die for the cause. Do not panic and no tricks. Your life and others are in jeopardy. I have a bomb and demand the sum of $15,000. No one’s. I will look in bag. No tricks. We know where you live. Move now. Time is very little.” The teller informed defendant that she did not have that amount of money at her station and gave him the $200 in cash from her drawer. With the money in hand, defendant went out the front door facing Jamaica Avenue. There was only one other exit, at the rear of the bank.
As defendant left, the teller pressed the silent alarm and went looking for the assistant manager whom she found near the rear of the tellers’ area and informed of the robbery. After *537 the assistant manager read defendant’s note, he and the teller went to the window on the side of the bank facing Hollis Court Boulevard and observed defendant. He was walking along the sidewalk on that side of the bank, around the corner from the front door, towards an automobile parked at curbside by a parking meter. The automobile was 15 feet from the bank window. Sitting in the driver’s seat was a person whose gender, age and race the teller could not determine. When defendant entered the automobile on the passenger side, it drove off.
There was also testimony by the officer who interviewed defendant at the station house upon his arrest several days after the robbery. According to the officer, defendant admitted the robbery, identified his driver, and said that they had discussed the robbery beforehand. No further evidence was presented as to the nature or extent of the driver’s participation. Under these facts, it cannot be said that the driver was sufficiently involved in the robbery or close enough to defendant at the time to have been "actually present”.
Ill
The Legislature has instructed us that in interpreting the Penal Law, the provisions must be read "according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law § 5.00; People v Ditta, 52 NY2d 657, 660). As with other statutory provisions, those contained in the Penal Law are generally to be construed so as to give effect to their most natural and obvious meaning (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 232; People v Sansanese, 17 NY2d 302, 306). This is particularly important where the clefinition of a crime is at issue, because courts must be scrupulous in insuring that penal responsibility is not "extended beyond the fair scope of the statutory mandate” (People v Wood, 8 NY2d 48, 51; see also, People v Gottlieb, 36 NY2d 629, 632; McKinney’s Statutes § 271 [c]). Applying these general rules, we examine the statute in question by analyzing its plain meaning, legislative history, and underlying sense and purpose.
As defined in the Penal Law, a simple taking of property by force, without any aggravating circumstances such as physical injury to a nonparticipant or use of a weapon, constitutes robbery in the third degree, a class D felony (Penal Law § 160.05). When the commission of the offense includes circum *538 stances which cause, threaten to cause, or increase the risk of physical injury to another, the Legislature has deemed the crime to be more serious and deserving of greater punishment. Thus, when a participant in the robbery is armed with a deadly weapon, uses or threatens the immediate use of a dangerous instrument, displays what appears to be a firearm, or causes serious physical injury to a nonparticipant, the offense is upgraded to robbery in the first degree, a class B felony (Penal Law § 160.15). Where the robbery is accompanied by less serious circumstances, it is classified as robbery in the second degree — the crime involved here — a class C felony (Penal Law § 160.10).[2] The Penal Law defines robbery in the second degree as follows:
"A person is guilty of robbery in the second degree when he forcibly steals property and when:
"1. He is aided by another person actually present (emphasis added); or
"2. In the course of the commission of the crime or of the immediate flight therefrom, he or another participant in the crime:
"(a) Causes physical injury to any person who is not a participant in the crime; or
"(b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm” (Penal Law § 160.10).
Turning first to the statute’s plain meaning, we conclude that the term "actually present” does not encompass the presence of the getaway driver here. Giving the term its natural and obvious meaning (see, McKinney’s Statutes § 94), "actual” refers to that which is "[ojpposed to potential, possible, virtual, theoretical, hypothetical, or nominal * * * in opposition to constructive or speculative * * * in contradistinction to virtual or constructive” (Black’s Law Dictionary 33 [5th ed 1979]; see also, 1 Oxford English Dictionary 96 [1933]). The notion of "actual presence” pertains, therefore, to something other than presence which is merely "theoretical” or "constructive”. To hold that the term "actual presence” means presence in the broader sense so as to include "constructive presence”, as the People urge, would read the word "actual” out of the statute. It would denude the phrase of its *539 plain meaning and, moreover, violate the accepted canon of construction, especially critical when interpreting penal provisions, that words which define or delimit the reach of statutory provisions may not be disregarded as superfluous, but must be given meaning and effect (see, McKinney’s Statutes §§ 231, 271 [b]; cf., Matter of Bliss v Bliss, 66 NY2d 382, 388-389; New York State Bridge Auth. v Moore, 299 NY 410, 415-416).
The legislative history of the robbery statute confirms our reading of the provision in question. We agree with the dissenting Justice at the Appellate Division that, by the phrase "aided by another person actually present”, the Legislature intended to exclude, as an aggravating factor, aid by a person other than one actually present — i.e., aid by one whose presence is merely constructive. (See, 123 AD2d, at 450 [Brown, J., dissenting in part].)
The seriousness of aid given by "an accomplice actually present” as an aggravating element in the crime of robbery was recognized in 1881 when the Legislature singled-out that circumstance as a factor sufficiently egregious to elevate the crime to robbery in the first degree in the old Penal Code (see, L 1881, ch 676, § 228).[3] The evident purpose in specifying that the accomplice be "actually present” was to incorporate, for purposes of the robbery statute, the distinction between actual and "constructive presence”, which was then well established in the common law, and to make clear that an accomplice who was only constructively present would not satisfy the statute (see, 21 Am Jur 2d, Criminal Law, §§ 169-170; Miller, Criminal Law, at 229-230 [3d ed]; Perkins and Boyce, Criminal Law, at 741 [3d ed]; LaFave and Scott, Substantive Criminal Law § 6.6 [b]). That this was the purpose becomes clear when section 228 of the 1881 Penal Code is read in the light of a decision of our *540 court earlier in the same year and in the light also of section 29, enacted as part of the same 1881 code, pertaining to the definition of principal for purposes of criminal liability.
In January 1881 our court held that, for purposes of criminal liability as a principal (specifically, common-law principal in the second degree, see, n 3, supra), although a defendant "must be present at the commission” of the felony, "[h]is presence may be constructive” (McCarney v People, 83 NY 408, 412, 413). We explained that it was sufficient if he "was so situated as to be able to give aid to his associate, with a view to insure the success of the common enterprise,” and, we continued, "[a] waiting and a watching at a convenient distance is enough” (id.). This broadened scope of the concept of "presence” in the common-law definition of principal was carried over into the statutory definition of principal in section 29 of the Penal Code of 1881. In adopting this new definition of principal, it is significant that the Legislature used the unqualified word "present” which, under the expanded meaning given it at common law, would include a person actually or constructively present.[4] By contrast, in section 228 of the Penal Code of 1881, the Legislature chose to require that the accomplice aiding the commission of the robbery be "actually present” in order to elevate the offense to aggravated robbery.
Concededly, for the purpose of assigning criminal responsibility to an aider or abettor as a principal, the Legislature used the unmodified word "present” in its broad sense in section 29 of the Penal Code of 1881. It is evident, however, *541 that for the totally different purpose of defining a factor of sufficient seriousness to raise the level of ordinary robbery to an aggravated degree, the Legislature intentionally used the modified term "actually present” for a narrower and more restricted meaning (see, McKinney’s Statutes §§ 97, 98 [to the effect that all parts of a legislative act are to be construed together and harmonized with each other as well as with the general intent of the whole statute, so as to give effect, if possible, to every part and word]).
That the Legislature would not have intended to include a person who was only constructively present is convincingly demonstrated by an analysis of the underlying sense and purpose of the aggravating accomplice factor in its context as part of the robbery sections (see, McKinney’s Statutes § 96 [to the effect that a "construction is to be preferred which furthers the object, spirit and purpose of the statute”]; People v Ryan, 274 NY 149, 152). The sole purpose of the phrase "actually present” in Penal Law § 160.10 (1) is to describe a circumstance which, like "causing] physical injury” to another (subd [2] [a]) or "displaying] what appears to be a * * * firearm” (subd [2] [b]), has the effect of raising the seriousness of the crime committed by a robber from a class D to class C felony.
When the three aggravating factors in Penal Law § 160.10 are read together, they reflect a concern for the added element of physical harm, danger, and perceived threat of additional violence to the victims of the robbery. That concern is clearly present in situations involving physical injury or the apparent willingness to use a firearm. Likewise, it is present where the robber is joined by another in his use or threat of force or in his seizing or retaining another’s property. No such concern exists, however, where the robber has but one accomplice, unknown and unseen to the victim at the time of the robbery, and limited in his participation to waiting for the robber and driving him from the area once the taking has been accomplished.
There is additional evidence in the statute that it was accessorial aid at the crime scene and not elsewhere which the Legislature considered sufficiently serious to be an aggravating factor. Two of the three aggravating factors, causing physical injury and displaying a firearm, operate to raise ordinary robbery to robbery in the second degree not only when the aggravating conduct occurs at the crime scene, but *542 also when it occurs during the "immediate flight therefrom” (subd [2]). By contrast, the aid rendered by an accomplice must, in order to operate as an aggravating factor, be rendered while that accomplice is actually present at the robbery (subd [1]). Assistance rendered solely in the course of "flight therefrom” does not raise the offense to second degree robbery (see, People v Timlin, 99 AD2d 296, 299-300 [Levine, J., dissenting], Iv denied 62 NY2d 992).
IV
Contrary to the position espoused in the dissenting opinion, our reading of the statute does not introduce an "entirely subjective” factor. Rather, it simply gives effect to the Legislature’s expressed recognition that the presence of an accomplice, lending aid actually at the crime scene, places the victims of a robbery in a genuinely higher risk of danger and, concomitantly, a greater level of fear for their own safety. These are the same objectively deducible, legislative concerns that underlie the other aggravating factors of Penal Law § 160.15.
Nor do the Commission Staff Notes on the revised Penal Law, relied upon by the dissent, support a different reading of the statute. Instead, they evince a legislative intent wholly consistent with the result we reach today. The use of a getaway car was included among the aggravating factors in the former robbery statute (former Penal Law § 2124, L 1909, ch 88, as amended). It was eliminated when the Penal Law was revised in 1965 because it was considered by the Legislature to be an insufficiently egregious factor to justify a more serious conviction and harsher sentence. The Commission Staff Notes explain that, where the robber acts alone, the use of an automobile simply does not seem "a highly significant item”. And where the robber acts with "a group of bandits”, regardless of whether an automobile is used, the robbery is "in any event” aggravated only "by virtue of the accomplice factor” (Commission Staff Notes on Proposed Penal Law art 165 [renum art 160], reprinted in 1982-1983 Gilbert Criminal Law and Procedure, at 2A-74). The mere use of a driver, whose participation in a bank robbery is limited to waiting outside and operating the getaway vehicle, plainly does not constitute a "group of bandits” who, "in any event”, must be accomplices who are "actually present” within the meaning of the statute. Thus, consistent with our decision, the Commis *543 sion Staff Notes do show that the use of a getaway car, without more, is a factor having little or no import. They do not, however, shed any additional light on the requirement, explicitly provided in the statute, that the driver, or other accomplice to a robbery, be "actually present”.
Here the evidence was that another person aided defendant in the course of his flight from the crime scene by driving him away. It showed nothing else. There was no suggestion that the driver was armed, prepared to assist defendant, or even observing defendant’s actions, or that he was sufficiently close to defendant to be available to render him aid during the actual commission of the robbery. Under these facts, where there is no showing that the driver was ready, willing or able to aid defendant in the forcible stealing from the teller or the bank — let alone that he directly participated therein — it cannot be said that he was "actually present” within any fair construction of the statute.
We have considered defendant’s other contentions and find them to be without merit. Accordingly, the order of the Appellate Division should be modified, defendant’s conviction reduced to robbery in the third degree, and the case remitted for resentencing.

. The Appellate Division affirmed two separate judgments of Supreme Court: one convicting defendant of robbery, second degree, under indictment No. 1952/81, upon a jury verdict; the other convicting defendant of robbery, third degree, under indictment No. 2028/81, upon a plea of guilty. On this appeal defendant challenges only the first of the convictions and the sentences imposed on both.

. The crimes of robbery in the first degree, second degree, and third degree are punishable by indeterminate terms of imprisonment having máximums of up to 25, 15, and 7 years, respectively (see, Penal Law § 70.00 [b], [c] and [d]).

. The seriousness which the Legislature has historically attached to this aggravating factor is shown by the fact that it was placed in the same category as carrying a dangerous weapon and infliction of serious physical injury in raising the crime of robbery to the first degree (see, Penal Code of 1881 § 228, L 1881, ch 676; Penal Law of 1909 § 2124, L 1909, ch 88; see also, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law §§ 160.10, 160.15, at 202-203, 205-206). In 1965 the Penal Law was rewritten and the aggravating circumstance of aid by an accomplice "actually present” was dropped to robbery in the second degree while unaggravated robbery was dropped to robbery in the third degree (see, L 1965, ch 1030). A subsequent amendment added physical injury to another and display of a firearm as circumstances elevating the crime to robbery in the second degree (see, L 1969, ch 1012, § 3).

. This section eliminated the common-law distinctions between principals in the first degree, principals in the second degree, and accessories before the fact. Under common law, a principal in the first degree was a person who knowingly engaged in illegal conduct, a principal in the second degree was a person who knowingly aided the principal in the first degree and was present (either actually or constructively), and an accessory before the fact was a person who knowingly commanded, induced, or procured another to commit the crime but was absent (see, Miller, Criminal Law, at 229-230 [3d ed]; McCarney v People, 83 NY 408). Despite these distinctions, under common law all three of these groups were criminally liable, albeit in varying degrees, for a robbery. The Legislature apparently recognized this fact, because when it enacted section 29 of the Penal Code of 1881, it provided that any "person concerned in the commission of a crime, whether he directly commits the act constituting the offense or aids and abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime [is criminally liable as] a principal” regardless of his prior status under common law.