THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS FERONE, Appellant.

Second Department, April 4, 1988

APPEARANCES OF COUNSEL

*Mahler & Harris (Steven R. Mahler* of counsel; *Perry S. Reich* and *Steven M. Schapiro* on the brief), for appellant.

*Robert Abrams, Attorney-General (John Michael Ryan* and *Elliott S. Greenspan* of counsel), for respondent.

**OPINION OF THE COURT**

Kooper, J.

By multicount indictment No. 3854/85, dated August 13, 1985, the defendant was charged with grand larceny in the second degree (two counts), grand larceny in the third degree, and insurance fraud in the first degree pursuant to Penal Law

former § 176.20 (four counts).[1] The transactions which underlie the charges against the defendant arise from the submission of various fraudulent claims under two policies of automobile insurance issued by Amica Mutual Insurance Company and Nationwide Insurance Company (hereinafter Nationwide). After a jury trial, the defendant was convicted of insurance fraud in the first degree (three counts), grand larceny in the second degree, and grand larceny in the third degree. On appeal, the defendant argues, *inter alia,* that his conviction of insurance fraud in the first degree under counts one and four of the indictment must be reversed. We agree for the reasons that follow.

Insofar as pertinent to the defendant's contentions with respect to counts one and four of the indictment, the facts disclose that in April 1984 the defendant applied to Nationwide for automobile insurance for his 1979 Chevrolet Corvette. According to the People, the defendant's application and supporting documents contained materially false statements in that defendant distorted the automobile's mileage, misrepresented its over-all condition, and utilized an alias and false address in submitting the application. On July 6, 1984, shortly after Nationwide issued the policy in question, the defendant presented his automobile for inspection at a drive-in claims office in connection with a claim for damages allegedly sustained in a hit-and-run collision. A Nationwide adjuster inspected the defendant's automobile and worked up an estimated cost of repairing the damages involved. On July 7, 1984, after application of a $200 policy deductible, Nationwide issued a draft to the defendant in the amount of $1,373.92. Although the defendant received the July 7, 1984 Nationwide draft, he nevertheless contacted Nationwide, falsely indicating that he had never received it. Nationwide placed a stop payment order on the first draft and issued a second draft to the defendant. Thereafter, the defendant deposited both drafts

---

1. Prior to November of 1986, the insurance fraud statute (Penal Law art 176) provided for three degrees of insurance fraud. Under Penal Law former § 176.20 the crime of insurance fraud in the first degree, then a class D felony, resulted upon the commission of a fraudulent insurance act by which the actor "wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one thousand five hundred dollars" *(see,* Penal Law former § 176.20). In 1986, Penal Law article 176 was amended to provide for five degrees of the crime of insurance fraud (L 1986, ch 515). Under the 1986 amendment, the aggravating dollar amount in respect to the first degree crime—now a class B felony—was increased to $1,000,000 *(see,* Penal Law § 176.30).

into a Citibank account he maintained and subsequently withdrew the funds from the account.[2]

Count one of the indictment, which charged the defendant with insurance fraud in the first degree, was premised upon the defendant's procurement of the Nationwide automobile policy through the submission of fraudulent misstatements in connection with his application. Penal Law § 176.05, which defines insurance fraud, states: "A fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer or purported insurer, or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which he knows to: (i) contain materially false information concerning any fact material thereto; or (ii) conceal, for the purpose of misleading, information concerning any fact material thereto".

■ At trial, it was the People's theory that the mere application for and procurement of the subject policy of personal insurance[3] constituted an independent and cognizable fraudulent insurance act distinct from the defendant's subsequent submission of claims for payment under the policy. We reject this contention as untenable in light of the definitional provisions of Penal Law § 176.05.[4]

---

**2.** The theft of the second draft forms the basis of a separate count of the indictment under which the defendant was charged with larceny in the third degree. This crime does not constitute insurance fraud.

**3.** Penal Law § 176.00 (4) defines "personal insurance" as:

"a policy of insurance insuring a natural person against any of the following contingencies * * *

"(c) losses or liabilities arising out of the ownership, operation, or use of a motor vehicle, predominantly used for non-business purposes".

We note further that in summation the prosecutor argued to the jury that the defendant's application disclosed that the insured's automobile was to be for his personal use and would not be used for business purposes.

**4.** Although it is undisputed that the defendant submitted certain claims under the Nationwide policy, it was the People's contention that the defendant's procurement of the policy represented a distinct fraudulent act in and of itself. Accordingly, in addition to those counts which charged defendant with insurance fraud involving the claims he submitted, a separate and additional count—count one—was included in the indictment charging the defendant with insurance fraud in the first degree premised solely upon the submission of the application and supporting documents.

Initially, in construing the substantive scope of the crime created by Penal Law § 176.05, we are guided by the general principles of construction set forth in Penal Law § 5.00, in which it is stated that, "the provisions herein must be construed according to the fair import of their terms to promote justice and effect the objects of the law". As the Court of Appeals has recently observed, this principle "is particularly important where the definition of a crime is at issue, because courts must be scrupulous in insuring that penal responsibility is not 'extended beyond the fair scope of the statutory mandate' *(People v Wood,* 8 NY2d 48, 51; *see also, People v Gottlieb,* 36 NY2d 629, 632; McKinney's Statutes § 271 [c])" *(People v Hedgeman,* 70 NY2d 533, 537; *cf., People v Miller,* 70 NY2d 903).

Application of the foregoing principle, in conjunction with a reading of the statutory language in question, reveals that the submission of an application for personal insurance in the absence of a subsequent claim for payment under the policy, does not constitute a fraudulent insurance act within the meaning of Penal Law § 176.05. The key provisions of Penal Law § 176.05—insofar as count one of the indictment is concerned—create a distinction between commercial and personal insurance in respect to the conduct which constitutes a "fraudulent insurance act". Although with regard to commercial insurance, a fraudulent insurance act may be committed through the "knowing and intentional" presentation of materially false statements in support of an application, with respect to "personal insurance", the statute imposes the requirement that there be made "a claim for payment or other benefit". At bar, there was no attempt by the People to establish that the subject policy was commercial or that a "claim for payment or other benefit" was made as part of the fraudulent conduct allegedly committed in connection with this count of the indictment. Moreover, while the legislative history underlying the enactment of the Insurance Frauds Prevention Act—of which Penal Law § 176.05 is a part—is generally uninformative,[5] we note, nevertheless, that the Leg-

---

5. The Governor's approval memorandum reveals that the Insurance Frauds Prevention Act was enacted in order to combat the "increasing frequency of fraudulent activities related to the business of insurance, especially relating to stolen motor vehicles and arson for insurance" *(see,* Governor's approval mem, 1981 NY Legis Ann, at 384). In order to effectuate this objective, and to make full use of the special expertise developed by the Insurance Department, the new legislation created an Insurance Frauds

islature's intent to distinguish between commercial and personal insurance in respect to the conduct constituting a fraudulent insurance act is evidenced by the enactment—as part of the Insurance Frauds Prevention Act—of Insurance Law former § 38-b. Insurance Law former § 38-b, entitled "Fraudulent insurance acts prohibited" contains a provision which mandates the inclusion of a written warning against the making of false statements in applications for *commercial insurance* (Insurance Law former § 38-b [3]). Significantly, there is no parallel requirement in the statute mandating the inclusion of such a warning on applications for personal insurance. In light of the foregoing, it is apparent that in order to commit a fraudulent insurance act involving a policy of personal insurance, a claim for payment or other benefit must be made. Since the People failed to establish that such a claim for payment was made by the defendant insofar as this count was concerned, the defendant's conviction of insurance fraud in the first degree under count one of the indictment must be reversed.[6]

 Count four of the indictment also charged defendant with insurance fraud in the first degree premised upon the defendant's commission of a fraudulent insurance act through his alleged attempt to "wrongfully take, obtain and withhold *money* in excess of $1,500 from NATIONWIDE INSURANCE COMPANY" (emphasis added). It is undisputed, however, that by virtue of the July 1984 claim, the defendant received a total of $1,373.92 in benefits from Nationwide. The People nevertheless argue that the proof adduced at trial established that the defendant attempted to obtain money in excess of $1,500. We disagree.

Penal Law former § 176.20 provided that "[a] person is

---

Bureau, empowered to receive criminal identification and intelligence materials from the Division of Criminal Justice Services. The Governor's approval memorandum further discloses that the addition of Penal Law article 176 entitled Insurance Fraud was enacted in order to effectuate the purposes of the legislation (*see,* 1981 NY Legis Ann, at 383-384; *see also,* 1981 Ann Report of the Superintendent of Ins, at 112).

6. Even if it could be said that the submission of an application for personal insurance alone constituted a fraudulent insurance act, the People have failed to establish that such conduct represented the crime of insurance fraud in the first degree—of which defendant was convicted—inasmuch as there was no evidence establishing the taking, or attempted taking of any sum of money in connection with the defendant's acts in procuring the policy. We note in this respect that the defendant was charged with various counts of larceny and insurance fraud premised upon the claims made and money obtained under the policy.

guilty of insurance fraud in the first degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one thousand five hundred dollars". In respect to the appropriate method by which to ascertain the value of the money the defendant attempted to obtain for purposes of count four of the indictment, the People maintain that the relevant provision of the Penal Law is section 155.20, under which value is determined by reference to the market value at the time and place of the crime, or if such valuation cannot be satisfactorily ascertained, the cost of replacement within a reasonable time after commission of the crime (see, Penal Law § 155.20 [1]). According to the People, the $1,573.92 estimate for repair to the defendant's automobile must be construed as the "actual cost of replacement", and, therefore, the amount which the defendant attempted to obtain for the purposes of determining his guilt under count four of the indictment. Since the amount of the estimate exceeded $1,500, the People conclude that the defendant was properly convicted of insurance fraud in the first degree under the indictment. We find this contention to be unavailing.

Initially, it is notable that the specific language of the indictment accuses the defendant of attempting to take "money" with a value in excess of $1,500, property in respect to which the foregoing valuation criteria would ordinarily have no application. In any event, the circumstances underlying the fraudulent acts allegedly committed in connection with count four of the indictment reveal that the defendant was not attempting to effect the theft of a repair, as the People's valuation analysis seemingly suggests.

While the repair of the defendant's automobile by some third party may have been contemplated by the carrier when it issued the July 7, 1984 draft, the facts disclose that, by presenting the subject claim, the defendant was attempting to induce the carrier to pay that portion of the repair expense for which it was contractually responsible pursuant to the relevant terms of the policy. Accordingly, the object of the defendant's fraudulent intent, and therefore, the money which the defendant attempted to obtain through submission of the claim, was an amount equal to the carrier's obligation with respect to the particular loss involved. At bar, the adjuster's estimate for repair of the damages totaled $1,573.92. It is undisputed, however, that the carrier's obligation to pay was

subject to the application of a $200 policy deductible. Application of the $200 policy deductible, therefore, fixes the carrier's responsibility for the loss in question at $1,373.92, which sum, we conclude, represents the value of the money the defendant attempted to obtain for the purpose of ascertaining whether he committed insurance fraud in the first degree. Since the People have failed to establish that the defendant attempted to obtain money in excess of $1,500, as charged in the indictment, the defendant's conviction under count four of the indictment must be set aside. We find, however, that the proof adduced with respect to value established the defendant's guilt of insurance fraud in the second degree beyond a reasonable doubt, and therefore, we have reduced the defendant's conviction on that count accordingly *(see,* Penal Law former § 176.15).

■ Finally, the defendant contends that the court erred in admitting as a business record a "loss" file maintained by the insurer in connection with the claim made by the defendant under the policy *(see,* CPLR 4518 [a]; CPL 60.10; *People v Kennedy,* 68 NY2d 569; *McClure v Baiers Automotive Serv. Center,* 126 AD2d 610; Fisch, New York Evidence § 832). We find this contention to be unavailing. Initially, the record provides no support for the defendant's contention that materials were summarily "dumped" into the loss file admitted into evidence. The loss file in question, People's exhibit 2—described by a Nationwide adjuster as a "standard" loss file—was compiled in connection with a claim made by the defendant in May of 1984 and consisted, *inter alia,* of damage, inspection and loss reports, a repair certificate and the draft issued by the insurer to the defendant in settlement of the claim.[7] Contrary to the defendant's contentions, the evidentiary foundation necessary to admit the file as a business

---

7. The defendant's reliance upon the Court of Appeals decision in *Matter of Leon RR* (48 NY2d 117) is misplaced inasmuch as the court's holding does not support the contention that the loss file in question was erroneously admitted into evidence as a business record. In *Leon RR,* a proceeding to terminate parental rights, the court condemned the wholesale admission into evidence of a voluminous case file on the ground that the file contained "statements, reports and even rumors made by persons under no business duty to report to petitioner", the Department of Social Services *(Matter of Leon RR, supra,* at 123; *see also, Johnson v Lutz,* 253 NY 124). No such objection was raised at bar. We note, moreover, that the trial court afforded defense counsel ample opportunity to review each document in the file subsequent to the People's offer *(cf., Matter of Shawn C. A.,* 110 AD2d 697, 698, *lv denied* 65 NY2d 605).

record was laid through the testimony of a Nationwide senior claims adjuster, who testified that he was personally familiar with the record-keeping procedures for loss files, that the loss file in question represented the standard file maintained by the insurer in respect to a claim, that the file and its contents were kept in the ordinary course of business by the insurer, that it was in the regular course of business that such files were maintained, and that the documents contained in the file were generated by persons under a business duty to do so *(see, People v Kennedy,* 68 NY2d 569, *supra; Blair v Martin's,* 78 AD2d 895). In light of the foregoing, we conclude that the loss file was properly admitted into evidence. The defendant's contention—raised for the first time on appeal—that the People failed to establish that the documents in the file were made at or about the time of the events recorded, is not properly before us, and, in any event, is without merit. The testimony adduced in respect to the manner in which the claims process was managed established that the documents contained in the file were generated within days after the loss had been reported.

We have reviewed defendant's remaining contentions and find them to be without merit.

WEINSTEIN, J. P., RUBIN and SULLIVAN, JJ., concur.

Ordered, that the judgment is modified, on the law, by (1) reversing the conviction of insurance fraud in the first degree under count one of the indictment, vacating the sentence imposed thereon and dismissing that count of the indictment; and (2) reducing the conviction of insurance fraud in the first degree under count four of the indictment to insurance fraud in the second degree and by vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for resentencing on count four of the indictment; the findings of fact have been considered and determined to have been established.