OPINION OF THE COURT
Carol Berkman, J.
Defendant, who has no prior record, was a licensed stockbroker with Shearson Lehman. He came to his office over the weekend to catch up on paperwork and accidentally left a bag *582 containing a loaded gun in the elevator. Defendant has been indicted for one count of criminal possession of a weapon in the third degree. (A previous indictment for the same charge was dismissed for reasons set forth in a written opinion dated March 13, 1995.) Defendant has again moved for inspection of the Grand Jury minutes and dismissal of the indictment. It is now necessary for this court to decide the issue not reached in the March 13 opinion: whether the defendant’s mere possession of a loaded gun at the place where he is employed can be indicted as a felony. Based on the unambiguous language of the statute and its legislative history, this court must conclude that the People failed to make out a prima face case under section 265.02 (4) of the Penal Law, but have made out a case under subdivision (1). The charge is accordingly reduced.
Defendant has not alleged sufficient facts to merit a dismissal in the interests of justice, particularly given the reduction of the charges.
The evidence presented to the Grand Jury established defendant’s possession of the gun in question in the office building and that defendant was neither authorized nor required by his employer to possess a weapon in the course of his duties as a trader/broker. Defendant admitted he normally kept the gun, and another registered gun, in his home for self-protection and said he carried it to the office only accidentally. An official of the building management testified that management was responsible for security, and the carrying of guns by people working in the building was against building policy.
In charging the Grand Jury, the prosecutor did not submit the factual question of whether portions of the office building (specifically the elevator) outside the actual Shearson Lehman offices constituted defendant’s place of business (although that issue was discussed in this court’s previous opinion in this case). Instead, the instruction directed the Grand Jury to consider whether the possession was authorized or required as a part of defendant’s employment:
"Factors that bear on the applicability of the exception include whether possession of the gun is reasonably necessary for protection of the business, the incidents of ownership or control over the area or object to be protected, whether or not the weapon could reasonably be considered necessary or authorized for protection.
"In addition, the possession of the gun must be reasonably necessary for protection of the business and whether [sic] defendant had a security or protective function within the business.
*583 "For example, an area or location where there would be money changing hands and substantial public access.”
DISCUSSION
Since the People have chosen not to pursue the issue of whether the elevator in which the gun was found was spatially within the defendant’s place of employment, the issue is whether the People’s burden of proof for felonious gun possession can be reduced by engrafting — essentially legislating — the requirement that gun possession by an employee at his place of business must be authorized and required by the employer before it fits the "place of business” element of Penal Law § 265.02 (4). There is no disagreement that gun control should be even stricter than our present statutory scheme, but the task of strengthening our laws is for the Legislature, not the courts, and certainly not mere employers or business or building owners.
Generally, penal laws must be construed so as to give effect to their most natural and obvious meaning. (People v Hedgeman, 70 NY2d 533, 537 [1987].) A court is obligated to construe an unambiguous statute according to its plain meaning, even if the plain meaning seems unintended or inadvisable: "[A] court may not disregard the plain words in a statute. In construing a statutory pronouncement, it is not the function of the court 'to pass on the wisdom of a statute or any of its requirements, but rather to implement the will of the Legislature as expressed in its enactment’ ” (People v Van Allen, 216 AD2d 39 [1st Dept 1995] [quoting People v Smith, 79 NY2d 309, 311]). Moreover, "it is basic that a criminal statute is to be narrowly construed against the State and in favor of the accused”. (People v Francis, 45 AD2d 431, 438 [2d Dept 1974].) A strained or unnatural interpretation of a penal statute could potentially expand criminal liability and therefore "courts must be scrupulous in insuring that penal responsibility is not 'extended beyond the fair scope of the statutory mandate’ ”. (People v Hedgeman, supra, 70 NY2d, at 537 [quoting People v Wood, 8 NY2d 48].) Due process requires that a statute be sufficiently clear so that "a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal” (People v Byron, 17 NY2d 64, 67 [1966]). While this requirement "does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding” (supra), it does preclude a court from expanding criminal liability by construing an ordinary term in an extraordinary way.
*584 The relevant portion of Penal Law § 265.02 (4) is as follows: "A person is guilty of criminal possession of a weapon in the third degree when * * * He possesses any loaded firearm. Such possession shall not * * * constitute a violation of this section if such possession takes place in such person’s home or place of business.”
For purposes of this motion, there is no dispute that the defendant possessed a loaded firearm, and there is no dispute that such possession took place at the place where the defendant was employed. Therefore, the statutory exemption from felony liability would appear to apply. Nevertheless, the defendant was indicted for a class D felony under this section.
In opposition to defendant’s motion to dismiss, the People concede that "[according to the law, a place of business is a place where a person earns his livelihood”. (People’s mem, at 2 [emphasis in original].) The People argue that certain additional factors are relevant to the "place of business” exception, such as "the incidents of ownership or control over the area or object to be protected, whether or not the weapon could reasonably be considered necessary or authorized [by the employer] for protection and whether application of the exception would defeat the overriding purpose of the statute, which is to limit the use of concealed weapons”. (People’s mem, at 2-3.) While the prosecutor’s instruction to the Grand Jury on this point was not entirely clear, it conveyed a necessity for ownership, and/or authorization, and/or security function, and/or the necessity for the protection of the property.
The People do not cite, and this court is unable to find, any language in the statute or its legislative history to support the argument that these additional tests must be passed before the place of business exception applies. To the contrary, the express language of the statute is unqualified, and the legislative history explicitly states an intent not only to impose strict gun controls but also to balance the strictness with a limited recognition of the right to self-defense. (Report of NY State Jt Legis Comm on Firearms and Ammunition, 1965 NY Legis Doc No. 6, at 12.) The Legislature was also expressly aware that, at the time of the enactment of the statute, almost all jurisdictions— except for New York and Hawaii — totally decriminalized possession in one’s home, or on one’s property, or in one’s place of business. (Report of NY State Jt Legis Comm on Firearms and Ammunition, 1964 NY Legis Doc No. 12, at 12.)
Since the use of deadly force is not permitted in this State for the mere defense of property (Penal Law § 35.15 [2]), it is *585 quite illogical that the place of business exception should hinge on the necessity to protect mere business-property rights. Moreover, it hardly seems fitting, but absurd and dangerous, that the employer or business owner, rather than the Legislature, should in effect decide when certain conduct is felonious, rather than a misdemeanor. The legislative intent is not served by granting the privilege of the mitigating exception to owners, but denying it to laborers and employees. In short, the Legislature has determined that the criminality of gun possession is mitigated in the two places where an otherwise law-abiding person is likely to spend most of his time and to deserve the greatest expectation of personal security: his home and his workplace.
Apparently the Appellate Division, First Department, has never addressed this issue, perhaps because most cases like this are treated as misdemeanors, if only as a matter of prosecutorial discretion. The People chose to pursue this prosecution as a felony, and rely on two cases from the Second and Fourth Departments. (People v Francis, 45 AD2d 431 [2d Dept 1974], supra, affd on other grounds 38 NY2d 150 [1975] [post office]; People v Fearon, 58 AD2d 1041 [4th Dept 1977] [Bernz-O-Matic].) This court must follow rulings of the Appellate Divisions of other Departments until either the First Department or the Court of Appeals rules, but both Francis and Fearon are factually distinguishable.
Other jurisdictions with gun control laws discuss the meaning and limit the scope of the place of business exception. (The cases dealing with whether a particular location — a connecting roadway or the grounds outside the business itself, for example — is within the place of business at all are not relevant here. The People deliberately chose not to proceed on this theory although strict spatial limitations on the place of business could answer many of the public safety concerns which the People raise. This discussion also leaves aside those jurisdictions which, unlike New York, go out of their way to preserve the rights of individuals to carry guns. (E.g., Flores v State, 486 SW2d 577 [Tex 1972]; Peoples v State, 287 So 2d 63 [Fla 1973].)
Many jurisdictions do require a proprietary or possessory interest before the place of business exception applies. Often, security guards are included, albeit not always by explicit language, but deriving their immunity from the owner’s right to protect his own property. In these egalitarian times, and in this egalitarian State, it is difficult to justify limiting our place of business exception to owners or employers, particularly *586 when this elitist distinction would be based not on explicit legislative direction but on judicial interpolation. (See, Idelett v State, 14 Ga App 501, 81 SE 379 [1914]; but see, People v Free, 112 Ill App 3d 449, 445 NE2d 529 [1983].)
Moreover, New York’s statute has been recognized as quite different than those of jurisdictions which have held a proprietary interest is required for the place of business exception. Billinger v United States (425 A2d 1304 [DC App 1981]) interprets a statute which outlaws a person’s carrying a gun "except in his dwelling place or place of business or on other land possessed by him”. (See also, People v Clark, 21 Mich App 712, 176 NW2d 427 [1970].) Reading the statute in context with "dwelling house” or "other land possessed,” the Billinger court concluded that the exception requires a proprietary or possessory interest in the business. Notably, the court also points to significant distinctions between the District of Columbia statute and New York’s — first, that in New York the term, "[p]lace of business” is not couched between "dwelling house” and "other land possessed by him”, and, second, that New York’s exception "relates only to the degree of the offense”. (Billinger v United States, supra, at 1306.) Thus, the legislative purpose of deterring gun possession, which is presumably behind both the District of Columbia and the New York statutes, is still effected in New York without the necessity for restricting the place of business exception by judicial interpretation.
In Commonwealth v Carr (334 Pa Super 459, 483 A2d 542 [1984]), the Superior Court of Pennsylvania interpreted a statute which outlaws a person’s carrying a firearm "except in his place of abode or fixed place of business” as requiring a "controlling, proprietary or possessory interest.” (Supra, at 543.) If not so interpreted, the court reasoned, the specific subdivision of the Pennsylvania statute relating to an exception for employees with security duties would be "mere surplusage”. Again, the Pennsylvania statute, like the District of Columbia’s, but unlike New York’s, totally decriminalizes possessing a loaded gun in one’s place of business. (See also, State v Valentine, 124 NJ Super 425, 307 A2d 617 [1973].)
Giving the language of New York’s statute its plain and ordinary meaning, the defendant’s firearm possession in this case — which authorized or not, took place in the office building *587 where defendant worked — falls squarely within the "place of business” exception.
Accordingly, the charge is reduced to misdemeanor possession, Penal Law § 265.01 (1).