OPINION OF THE COURT
Carolyn E. Demarest, J.
Defendants Darryl Williams and Sean Fatal move to dismiss count 5 of the indictment, charging them both with gang assault in the first degree (Penal Law § 120.07), on the ground that the statute is unconstitutional, facially and as applied. Defendants contend that: (1) the wording and title of the statute allow the prosecution to denominate an individual charged under its provisions with being a gang member without proof or without a hearing to measure the probative value of such evidence against its potential for undue prejudice in violation of the due process rights of the accused, and (2) as applied, the element requiring that two or more persons be “actually present” for the commission of the assault is unconstitutionally vague. The People oppose defendant’s motion to dismiss and contend that (1) evidence of gang association is relevant when it is the motive and catalyst for the assault, and (2) the element requiring that the assault be committed by two or more persons “actually present” is not vague but clear by the plain language of the statute. The People have not addressed defendants’ argument that the mention of the word “gang” in the statute is itself prejudicial.
Evidence before the Grand Jury indicates that on October 22, 2000, an argument ensued between members of the “Bloods” gang and members of the “Crips” gang at a social club. After members of the “Crips” had left the club, the “Bloods” members, defendants Darryl Williams, Sean Fatal and Craig Hamilton, are alleged to have gotten into a car, and individually and simultaneously fired shots from that car while being driven by a fourth, and at this time uncharged, individ *336 ual. Their actions allegedly caused the death of Jean Bien-Aime and serious physical injury to another. Accordingly, defendants were charged with, among other crimes, gang assault in the first degree, under Penal Law § 120.07.
Penal Law § 120.07 states: “A person is guilty of gang assault in the first degree when, with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person.”
(1)
When interpreting the language of a statute, the court’s primary consideration is to ascertain and give effect to the intent of the Legislature. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a].) The legislative history of Penal Law § 120.07 indicates that the primary concern motivating the enactment of the statute was to impose a harsher penalty for an assault committed by multiple assailants. The Legislature reasoned that joint action by numerous assailants is “not only terrifying to victims but tends to increase the likelihood that severe or lethal injuries will be inflicted,” and, therefore, warrants a stiffer penalty. (See, Senate Mem in Support of L 1996, ch 647, 1996 McKinney’s Session Laws of NY, at 2582.) A similar rationale prompted the enactment of Penal Law § 160.10 (1), robbery in the second degree, which imposed a harsher penalty for the crime of robbery if committed by more than one assailant by elevating the crime from a class D to a class C felony. (See People v Hedgeman, 70 NY2d 533 [1987].)
Under Penal Law article 120, which defines various classes of assaults, assaults committed with a dangerous instrument or a deadly weapon carry a more severe punishment than an assault committed without a dangerous instrument or a deadly weapon. In enacting sections 120.06 and 120.07, the Legislature determined that the commission of an assault with the aid of two or more persons actually present is “tantamount” to committing an assault by means of a dangerous instrument or a deadly weapon and should be comparably punished. (See, Senate Mem, L 1996, ch 647; Governor’s Mem approving L 1996, ch 647, 1996 McKinney’s Session Laws of NY, at 1919.) A lone assailant who intentionally causes serious physical injury to another person faces the charge of assault in the second degree, a class C felony (Penal Law § 120.05 [1]). With the enactment of Penal Law § 120.07, a person who, when aided by two or more other persons actually present, intentionally causes serious physical injury to another person, faces the *337 charge of gang assault in the first degree, a class B felony, which carries a more severe punishment.
When analyzing the legislative intent in this case, it is particularly significant to consider not only the language that was used in drafting the statute, but what was omitted. The word “gang” does not appear in the statutory description of the crime. Contrary to defendants’ contention that a prosecution under the statute requires evidence of gang affiliation, there is no element requiring that any of the participants in the offense be affiliated with an organization or even with each other prior to the commission of the assault. In contrast to the California Street Terrorism Enforcement and Prevention Act (Cal Penal Code §§ 186.20-186.28), which was enacted in 1988 “to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs” (Cal Penal Code § 186.21), New York’s Penal Law defining “gang assault” does not require evidence of an association with an organized group of any kind. The California statute explicitly requires that the accused be an active and knowing participant in a “criminal street gang” that displays a “pattern of criminal activity.” (Cal Penal Code § 186.22 [a].) A “criminal street gang” is defined as “any ongoing organization, association, or group of three or more persons, whether formal or informal * * * having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.” (Cal Penal Code § 186.22 [f].) A “pattern of criminal gang activity” is specifically defined as involving the commission of two or more of 23 designated offenses “provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons.” (Cal Penal Code § 186.22 [e].) In contrast, the only requirement under New York’s Penal Law §§ 120.06 and 120.07, other than the intentional infliction of injury, is that there be at least three persons actually present to assist in the commission of the assault. It is apparent that the New York State Legislature rejected the elements of “gang membership” as outlined in the California statute. (Cf. Abramovsky, An Anti-Gang Statute for New York?, NYLJ, Dec. 30, 1997, at 3, col 1; Abramovsky, The Gang-Assault Statute In New York, NYLJ, Dec. 12, 1997, at 3, col 1.)
In People v Kleingartner (183 Misc 2d 771, 772 [Sullivan County Ct 2000]), looking to the traditional interpretation of *338 the word “gang” as defined in Merriam-Webster’s Collegiate Dictionary (10th ed) as “a group of persons working to unlawful or antisocial ends, especially a band of antisocial adolescents,” the court found the proof insufficient to establish the crime of “gang assault” where all three defendants charged with gang assault in the first degree were not actually present, i.e., physically in the immediate vicinity of the assault so as to be available to render immediate aid to one another. (See generally, Caher, Ruling Highlights Flaws in Gang Assault Statute, NYLJ, Feb. 17, 2000, at 1, col 3.) Without ruling as to whether such proof would be necessary, Judge LaBuda noted that there was no evidence that the three defendants were gang members or were complicit in a conspiracy to commit the assault.
In People v Kim (255 AD2d 337 [2d Dept 1998]), defendant was charged, among other crimes, with gang assault, for an assault perpetrated by several accomplices to revenge an earlier attack. Defendant admitted to driving several assailants while searching for the complaining witness and later drove the assailants from the scene of the attack. His statement placed him at the scene with a bat in his hands. Although there were allegations that this assault stemmed from an actual “street gang” revenge attack, the appellate court looked to defendant’s actions and participation in the crime when deciding whether there was legally sufficient evidence adduced before the Grand Jury to support the crime of gang assault. Finding that the evidence was sufficient upon the Grand Jury presentation, the Kim Court left to the jury the decision as to defendant’s culpability in light of the complainant’s testimony that “all of the members of the gang participated in the assault, but did not specifically inculpate the defendant” (255 AD2d, at 338). While somewhat ambiguous, the Kim decision is not inconsistent with this court’s conclusion, based upon the language of the statute and the legislative history, that the word “gang” as used in the gang assault statute has no associational implications but is limited to the requirement that a minimum of three persons be actually present and participating in the assault. The jury will be so instructed.
(2)
Defendants’ second argument is that the element requiring the aid of “two or more persons actually present” during the commission of the assault is unconstitutionally vague. This language, however, was taken verbatim from the definition of *339 “another person actually present” under Penal Law § 160.10 (1), defining robbery in the second degree. This statute, first enacted in 1881 (L 1881, ch 676, § 228), has been interpreted by the courts and applied by juries in the State of New York for over a hundred years.
The meaning of the aggravating element “aided by another person actually present” was specifically and unequivocally defined by the Court of Appeals in People v Hedgeman (70 NY2d 533, supra). Distinguishing “actual presence” from “constructive presence” in light of legislative history and intent, the Court found that a defendant who participated as a getaway driver, but was not present in the immediate vicinity of the robbery and did not participate in threats of force, actual force or the taking of property, was not “another person actually present” as required under Penal Law § 160.10 (1). (Contrast, People v Dennis, 75 NY2d 821 [1990].) The Court ruled that whereas a “constructive presence” may be sufficient for accomplice liability, it is insufficient to establish the aggravating element requiring aid from another actually present. (People v Hedgeman, supra, at 539.) The Court concluded that “the aid rendered by an accomplice must, in order to operate as an aggravating factor, be rendered while that accomplice is actually present at the robbery” (id., at 542). The majority rejected the dissenter’s argument that their “narrower and more restrictive” definition of this aggravating element created an “ ‘entirely subjective’ factor” (id., at 541-542). The same definition of “aided by another actually present” set forth in Hedge-man relating to robbery applies to the crime of gang assault as the two statutes are in pari materia. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 222.) The participants in the assault must be physically present, willing and able to render immediate aid to one another, and must, by their presence, pose an additional risk of violence. There is no vagueness in this element of the crime of gang assault.
The evidence indicates that on October 22, 2000, defendants Darryl Williams, Sean Fatal and Craig Hamilton, accompanied by a fourth person, were together in an automobile and individually and simultaneously fired shots from the car window allegedly causing death to Jean Bien-Aime and serious physical injury to another person. There is no doubt that defendants’ alleged conduct meets the elements of the crime of gang assault, specifically the requirement that at least three persons be “actually present” as participants in the crime as required by the statute.
*340 (3)
There are further allegations in this case, however, that defendants are actually members of an identifiable and organized “street gang” called the “Bloods.” While not required to establish the crime of gang assault, the People contend such evidence should be admitted to establish the motive for the assault. Defendants assert that introduction of such evidence would unduly prejudice them from receiving a fair trial. At the appropriate time, this court will weigh the probative value of such evidence against any possible prejudice caused to defendants. (See People v Ventimiglia, 52 NY2d 350 [1981].) Such a determination should be made on a case-by-case basis. Should this court permit the introduction of evidence of “gang membership” under People v Molineux (168 NY 264 [1901]), for the limited purpose of demonstrating motive, the jury will be appropriately instructed consistent with 1 CJI(NY) 12.20. In any event, the jury will be instructed that the word “gang,” as used in the gang assault statute, means only three or more persons actually present and aiding each other in the commission of an assault.
Upon this analysis and with the aforementioned limiting instructions, this court finds no constitutional impediment in the gang assault statute on its face or as applied here. The motion of dismiss count 5 of the indictment as it applies to Darryl Williams and Sean Fatal is denied.