■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUSSELL WARD, Appellant. — Appeal from a judgment of the County Court of Schenectady County (Stroebel, Jr., J.), rendered November 10, 1982, upon a verdict convicting defendant of the crimes of attempted robbery in the second degree and criminal possession of a weapon in the second degree.

The chain of events leading to defendant's convictions began in late September, 1981, when Richard "Danny" McCloud offered to disclose to the Schenectady County District Attorney's office certain information concerning an impending robbery in exchange for favorable treatment of his brother, who was awaiting sentence for unrelated crimes. The anticipated robbery was to be committed against employees of the Price Chopper Supermarket on Eastern Parkway in the City of Schenectady while en route to making the evening deposit of daily receipts at the branch office of a bank which adjoined the market parking lot. As a result of that disclosure, Schenectady police furnished McCloud with equipment through which three tapes were recorded of various conversations among some of the participants in the robbery during the planning stage and through the actual commission of the crime on October 3, 1981. The robbery was to involve the use of two cars and weapons consisting of handguns and a shotgun. Defendant and McCloud recruited Anthony Ferrara and, shortly before the robbery, Michael and Gerald Wells, principally for the purpose of driving the getaway cars. Defendant and the two Wells brothers drove to the scene in one car and McCloud and Ferrara in the other. Defendant and McCloud, who was disguised in a white nurse's uniform and armed with a gun, exited from their vehicles. McCloud then accosted at gunpoint two police officers posing as Price Chopper employees and demanded the receipts. One of the officers handed a bag of money to him, but then grabbed the gun and pushed him aside. Other police officers who were staked out also appeared. Defendant initially eluded arrest, got back in his car and both vehicles left the scene during an exchange of gunshots. A short, high-speed chase ensued before the cars were stopped and all occupants apprehended. During the chase, a green box containing several loaded handguns was thrown out of one of the escape vehicles and was subsequently recovered by the police.

Defendant, Ferrara and the Wells brothers were jointly indicted on robbery and weapons possession charges. After a trial of over seven weeks and some two days of deliberations, the jury found defendant guilty of attempted robbery in the second degree and criminal possession of a weapon in the second degree. The jury was unable to arrive at a verdict as to the codefendants' criminal responsibility for attempted robbery, but found each of them guilty of criminal possession of a weapon in the third degree. Following sentencing,* defendant initiated the instant appeal.

---

\* Defendant was sentenced as a predicate felon to concurrent prison sentences of 3½ to 7 years for his conviction of attempted robbery in the second degree and 7½ to 15 years for his conviction of criminal possession of a weapon in the second degree.

The record contains overwhelming evidence of defendant's guilt, including the testimony of McCloud that he was initially approached by defendant regarding the robbery, scientific evidence that defendant had fired a weapon during the incident, his apprehension while fleeing from the scene and, most significantly, the tape-recorded conversations clearly establishing his leadership role in the whole operation. The jury's verdict was thus amply supported by the evidence and, contrary to defendant's contention, was not in any way undermined by the failure to arrive at verdicts convicting the codefendants of any crime other than a lesser included weapons possession charge. Ferrara and the Wells brothers adduced evidence that they were either unknowing or unwilling participants, albeit assisting in transporting defendant, McCloud, and the weapons to and from the scene of the robbery. The pertinent statutory definition of robbery in the second degree, i.e., forcibly stealing property while "aided by another person actually present" (Penal Law, § 160.10, subd 1), which defendant was convicted of attempting to commit, does not require that the person assisting share the perpetrator's intent. Thus, here, as in *People v Tucker* (59 AD2d 953), it was factually and legally possible for the jury to find only one defendant guilty in connection with the robbery. The tapes and gunshot-residue test evidence also supported the jury's implicit finding that only defendant possessed the weapons with the requisite intent to use them unlawfully against another, which was reflected in the verdicts convicting defendant of criminal possession of a weapon in the second degree (Penal Law, § 265.03), while merely convicting the codefendants of the lesser crime of criminal possession of a loaded firearm (Penal Law, § 265.02, subd [4]).

We similarly find no basis for upsetting defendant's convictions on his claim that the trial court committed various errors in the reception of evidence. The tapes were redacted to remove any reference to uncharged crimes and, therefore, the trial court did not commit the error concerning the same tapes which was the ground for reversal in defendant's earlier burglary conviction (see *People v Ward,* 62 NY2d 816). The People sufficiently established the identity and chain of custody of the gunshot-residue evidence to support its admissibility (see *People v Connelly,* 35 NY2d 171, 174-175) and there was an adequate foundation for the expert testimony introduced on that issue. Nor was error committed in the use of transcripts of the tapes as an aid to the jury's understanding while listening to the conversations recorded thereon, since defendant has not pointed to any significant inaccuracies in the transcripts (see *People v Kuss,* 81 AD2d 427, 429-430).

As to defendant's remaining points, all save one are either totally without merit, unpreserved for appellate review by timely objection at the trial, or harmless in view of the overwhelming evidence of defendant's guilt. The single exception meriting extended discussion relates to the failure of the trial court to grant defendant's motion for a severance and a trial separate from his codefendants.

The decision to grant or deny a severance is generally left to the discretion of the trial court (*People v Bornholdt,* 33 NY2d 75, 87, cert den *sub nom. Victory v New York,* 416 US 905). The protracted length of the actual trial in the instant case lends support to the trial court's discretionary denial of a separate trial here. Under these circumstances, a severance would only have been required if it appeared that "a joint trial would so prejudice a defendant as to deny him a fair trial" (*People v Haynes,* 88 AD2d 1070). Defendant has not shown any such prejudice here. First, the mere fact that he was the only defendant who did not take the witness stand does not alone give rise to any inference of prejudice, particularly since the trial court gave proper instructions on the effect of his failure to testify. We find no record support for defendant's claim that counsel for the codefendants either expressly or impliedly commented on his failure to testify. Similarly, we can find no prejudice arising out of the single oblique reference to a previous proceeding involving defendant, made during the cross-examination of McCloud by a codefendant's attorney. Nor was defendant prejudiced by the testimony of the codefendants implicating him. Defendant had no cognizable right to be shielded from the testimony of the other participants in the crime and no guarantee that they would not have been called to testify against him at a separate trial, since their cases could have been disposed of before his trial or they could have been granted immunity. In any event, the record discloses that the thrust of the defense tactics of the other participants was to place the primary responsibility for the crime upon McCloud, rather than upon defendant. Finally, on the severance issue, there was nothing in the trial court's *Sandoval* rulings which restricted defendant's attorney from fully cross-examining any of his codefendants, and this, by itself, is sufficient to distinguish the instant case from that of *People v Rodriguez* (91 AD2d 591), upon which defendant principally relies.

Finding nothing in defendant's remaining contentions to merit reversal and no reason to modify his sentence on the ground of excessiveness, we affirm.

Judgment affirmed. Mahoney, P. J., Kane, Main, Casey and Levine, JJ., concur.