[781 NYS2d 636]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK MALDONADO, Appellant.

First Department, September 2, 2004

APPEARANCES OF COUNSEL

*Laura R. Johnson, The Legal Aid Society*, New York City (*William B. Carney* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Tracy Siligmueller* and *Karen Swiger* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

Defendant was charged with and convicted of the knifepoint robbery of Ernesto Montoya, a vendor of ice cream from a Mister Softee vehicle that Montoya had temporarily parked in the vicinity of 466 East 185th Street in the Bronx to sell his wares. After Montoya parked the truck, the codefendant, Serrano, approached and asked him about an ice cream cone. As Montoya was serving Serrano, he heard the back door of the truck slide open, at which point Serrano walked away toward the corner of 185th Street and Washington Avenue. When Montoya turned around, he observed defendant standing in the well-lit truck, brandishing a knife. Before parking the truck at this particular location, Montoya had observed defendant and Serrano on two separate occasions talking to each other and surveilling the truck.

After a demand for his money, Montoya handed defendant approximately $300, which was all he had on his person. During the course of the incident, Montoya, obeying defendant's order not to move, sold ice cream to several children who had approached the truck. After taking Montoya's money, defendant exited the truck and crossed the street, where he jumped over a fence and disappeared from sight. Later, Montoya saw defendant and Serrano meet up at the corner of 185th Street and Washington Avenue. Montoya immediately notified the police of the incident, furnishing descriptions of both defendant and Serrano. Montoya and two police officers subsequently but unsuccessfully canvassed the area. Later, after dropping Montoya off at his truck, the two officers spotted defendant and Serrano, matching the descriptions given by Montoya, sitting together in a nearby park. The officers brought Montoya to the park where he immediately identified defendant and Serrano, who were sit-

ting together on a bench. One of the officers recovered the knife used in the robbery from defendant and $61 from Serrano.

The jury acquitted defendant of robbery in the first degree but found him guilty of robbery in the second degree and, as instructed, did not render a verdict as to the third count, robbery in the third degree. The jury acquitted Serrano of robbery in the first and second degrees, but convicted him of robbery in the third degree. On appeal, defendant argues that the verdict convicting him of robbery in the second degree on a theory that he was aided in the commission of that crime by his codefendant, Serrano, who was actually present, was repugnant to the codefendant's acquittal of the same charge. We affirm.

Initially, we reject the People's argument that the issue is unpreserved. Immediately after the verdict was returned and before the jury was discharged, defendant's attorney requested permission to approach the bench, an application in which codefendant's counsel joined. Codefendant's counsel then moved, joined by defense counsel, to set aside the verdict on the ground of repugnancy. The People opposed. The court reserved decision and, without any consideration of the requirement to direct the jury to resume deliberations and reconsider its defective verdict (CPL 310.50 [2]; see People v Satloff, 56 NY2d 745 [1982]; People v Stahl, 53 NY2d 1048, 1050 [1981]), discharged the jury without objection. In point of fact, the court never rendered a decision on the motion.

The Court of Appeals has held that "in jury cases any claim that the verdict is repugnant must be made before the jury is discharged [citations omitted]. This permits the court to resubmit the matter to the jury to obtain a consistent verdict" (People v Alfaro, 66 NY2d 985, 987 [1985]). As the record shows, counsel for both defendants timely presented cogent arguments as to why the verdict was repugnant, thus preserving the issue now being raised. There still remains, however, the question of waiver. While they are often confused and may overlap, waiver and preservation are separate concepts (People v Ahmed, 66 NY2d 307, 311 [1985]).

The argument that defendant waived the issue by failing to object when the court discharged the jury without rendering a decision on the repugnancy motion has merit. At the argument at the bench to set aside the verdict as repugnant, defense counsel noted that "the record should reflect that this conference is being held while the jurors are still present in the courtroom and that they have not yet been discharged." Thus,

it is clear that defense counsel was aware that the remedy for a defective verdict was resubmission of the matter to the jury in order to resume its deliberations and reconsider its verdict pursuant to CPL 310.50 (2). Yet, counsel permitted the court, without objection, to discharge the jury without ever ruling on the motion. By failing to object, defendant allowed the court to foreclose any possibility of remedying the claimed repugnancy and thus waived his right to assert the claim on appeal.

Moreover, inasmuch as the repugnancy argument was a joint effort initiated by the codefendant, the failure to request a resubmission of the case to the jury was arguably a strategic decision to avoid the possibility of the codefendant's conviction of a more serious crime. Had there been a resubmission, the codefendant could have been convicted of robbery in the second degree (*see People v Alfaro*, 66 NY2d at 987 [the court is permitted to "resubmit the matter to the jury to obtain a consistent verdict, even if that may require changing an 'acquittal,' on one or more counts, to a conviction"]). Such a strategy should not be permitted (*see People v White*, 53 NY2d 721, 723).

On the merits, a verdict is repugnant "only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury" (*People v Tucker*, 55 NY2d 1, 4 [1981]). "A determination of whether a verdict is repugnant is based solely on a review of the trial court's charge regardless of its accuracy" (*People v Green*, 71 NY2d 1006, 1008 [1988]).

Before explaining the specific charges to the jury, the court told the jurors that "the theory of the case is acting in concert." It read Penal Law § 20.00 to explain the meaning of acting in concert. In defining the elements of robbery in the second degree (Penal Law § 160.10 [1]), the court stated, in relevant part:

> "[A] person is guilty of robbery in the second degree when that person forcibly steals property and when that person is aided by another person actually present when such person is in position to render . . . immediate assistance to a person participating in the robbery and is ready, willing and able to do so. . . .

> "That on or about June 30, 2001, in the county of the Bronx, the defendants Frank Maldonado and Mark Serrano forcibly stole property and that each defendant was aided in doing so by the other defendant who was actually present.

"Therefore, if you find that the People have proven beyond a reasonable doubt <u>both of these elements you must find the defendants guilty of the crime of robbery in the second degree</u>" (emphasis added).

Thus, it was impossible for the jury to convict defendant under a theory that he was aiding and aided by Serrano who was actually present and at the same time acquit Serrano of robbery in the second degree, finding that he was not aiding and aided by defendant who was actually present (*see People v Hampton*, 61 NY2d 963 [1984]).

The People's reliance on *People v Green* (71 NY2d 1006 [1988], *supra*) is misplaced. There, as here, the defendant argued that because the jury found him guilty of robbery in the second degree and acquitted his codefendant of the robbery as an accomplice pursuant to Penal Law § 20.00, the verdict was repugnant. The Court rejected the argument, holding that because "[a]n examination of the instructions given to the jury here reveals that the trial court, in defining the phrase 'aided by another person actually present' for purposes of Penal Law § 160.10 (1), did not instruct the jury that the actions and mental state of the other person had to be sufficient to convict that person as an accomplice under Penal Law § 20.00," the verdict was not inherently contradictory (71 NY2d at 1008). Here, as noted, unlike *Green,* the court charged that the conduct and mental culpability of each of the defendants had to be sufficient to convict that person as an accomplice under Penal Law § 20.00.

Moreover, in addition to acquitting codefendant Serrano of robbery in the second degree, the jury convicted him of robbery in the third degree. Thus, there can be no claim that the jury concluded Serrano was present and aiding defendant but somehow did not possess the mental state necessary to support a robbery conviction. By convicting Serrano of robbery in the third degree, the jury necessarily found that he intended to steal property forcibly from Montoya. Similarly, Serrano's conviction precludes any possibility that the jury found that defendant was aided by someone, but that Serrano's identity as the second perpetrator was not established.*

Thus, although the verdict was repugnant, as argued, defendant, in failing to object to the discharge of the jury without a

---

* There could be a proper verdict where two defendants are charged with second degree robbery under an "aided by another person actually present" theory, but the jury only convicts one, finding that there were two perpetrators, but that one defendant was *misidentified.*

ruling on his motion, waived his right to raise the issue on appeal.

Accordingly, the judgment of the Supreme Court, Bronx County (John A. Barone, J.), rendered July 18, 2002, convicting defendant, after a jury trial, of robbery in the second degree and sentencing him, as a second violent felony offender, to a term of eight years, should be affirmed.

Tom, J.P., Andrias, Saxe and Marlow, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered July 18, 2002, affirmed.