[866 NYS2d 78]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW SANCHEZ, Appellant.

First Department, October 23, 2008

2

## APPEARANCES OF COUNSEL

*Dershowitz, Eiger & Adelson, P.C.*, New York City (*Nathan Z. Dershowitz, Amy Adelson* and *Daniela Klare Elliott* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Gina Mignola* and *Amyjane Rettew* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

In the early morning hours of January 1, 2005, two middle-aged men, Herbert Griffin and Liam McCormack, were assaulted in the street by three much younger men, defendant-appellant Matthew Sanchez and codefendants Anthony Amitrano and Nenad Jurlina. The incident occurred after the three younger men left a bar as it was closing following a New Year's Eve party. McCormack, a part owner of the bar, refused to permit Sanchez to take his drink with him as he left. Taking offense at this, Sanchez removed McCormack's keys from the bar's front door and walked away with them, accompanied by Amitrano and Jurlina. The altercation began when McCormack caught up with Sanchez and his companions a few blocks away from the bar and demanded the return of his keys. Griffin, a friend of McCormack's, followed McCormack from the bar to help him confront defendants. It is undisputed that the trial evidence supports the jury's finding that Griffin suffered a serious head injury in this incident. McCormack, however, was not seriously injured.

Sanchez, Amitrano and Jurlina were indicted for gang assault in the first degree against Griffin (count I) and for attempted gang assault in the first degree against McCormack (count II). On the count relating to Griffin, the lesser included offenses of gang assault in the second degree, assault in the second degree, and assault in the third degree were submitted to the jury. On the count relating to McCormack, the lesser included offenses of attempted gang assault in the second degree, attempted assault in the second degree, assault in the third degree, and attempted assault in the third degree were submitted to the jury. The jury was instructed (with the consent of all parties) to consider first the count against each defendant relating to Griffin and then to proceed to consider the count relating to McCormack only if that defendant was being acquitted of gang assault in both the first and second degrees on the count relating to Griffin. The jury was also instructed on principles of accessorial liability (*see* Penal Law art 20).

In pertinent part, the court charged the jury on gang assault in the second degree, the most serious lesser included offense submitted on the count relating to Griffin, as follows:

"Under our law a person is guilty of Gang Assault in the Second Degree when with intent to cause physical injury to another person and when aided by two or more other persons actually present he causes serious physical injury to such person.

"Again, some of the terms have their own special meaning in the law. . . .

"[A] person is actually present when such person is in a position to render immediate assistance to a person participating in the assault and is ready, willing and able to do so *irrespective of whether such person intended to cause physical injury*.

"Because of this definition of actually present, *even if you find an individual defendant not guilty of this crime, because the People have not proven beyond a reasonable doubt that he had the intent required for the commission of the crime, you can still find another defendant or defendants guilty if you find that the not guilty defendant was actually present as I defined that term and that all the elements of the crime are proven by the People beyond a reasonable doubt.*

"So, in order for you to find the defendant guilty of this crime the People are required to prove from all the evidence in the case beyond a reasonable doubt the following elements.

"One, that on or about January 1st, 2005, in the County of New York, the defendant Anthony Amitrano, or Nenad Jurlina, or Matthew Sanchez personally or by acting in concert with others caused serious physical injury to Herbert Griffin.

"The second element, that the defendant did so with the intent to cause physical injury to Herbert Griffin.

"Three, that the defendant was aided by two or more persons actually present. . . .

"Therefore, if you find the People have proven be-

yond a reasonable doubt each of those elements with respect to an individual defendant, you must find that defendant guilty of the crime of Gang Assault in the Second Degree.

"On the other hand, if you find the People have not proven beyond a reasonable doubt any one or more of those elements with respect to an individual defendant you must find that defendant not guilty of the crime of Gang Assault in the Second Degree." (Emphasis added.)

As indicated by the italicized passages of the jury charge, the court instructed the jury, in substance, that an acquittal of one of the three defendants of gang assault on the count relating to a given victim did not require that the other two defendants also be acquitted of gang assault on that count. This charge was given over the objection of the defense, which argued that an acquittal of any defendant of gang assault required that the other two defendants also be acquitted of gang assault.

During deliberations, the jury sent a note asking: "If the jury believes that there were two men on Griffin and one on McCormack can that constitute gang assault." Subject to the objections "previously made," the defense agreed that the court could respond that "[t]wo people on Mr. Griffin and one on McCormack assuming all the elements have been proven beyond a reasonable doubt can constitute gang assault." The jury was so instructed.

The jury convicted Sanchez and Jurlina of gang assault in the second degree against Griffin, and therefore did not return a verdict as to those two defendants on the count relating to McCormack. At the same time, the jury acquitted Amitrano of all charges relating to Griffin but convicted him of assault in the third degree against McCormack. This appeal by Sanchez ensued.

■ "A person is guilty of gang assault in the second degree when, with intent to cause physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person" (Penal Law § 120.06).[1] Focusing on the requirement that a conviction for this crime be supported by evidence that

---

1. We note that gang assault in the first degree (Penal Law § 120.07), of which all defendants were acquitted, requires that the defendant be proven to have acted "with intent to cause *serious* physical injury" (emphasis added), but is otherwise identical to the second-degree crime.

the defendant acted while "aided by two or more other persons actually present," Sanchez argues that the court erred in instructing the jury, over objection, that an acquittal of one of the three defendants on the count relating to a given victim did not require that the other two defendants also be acquitted of gang assault on that count. Relatedly, Sanchez further argues that the jury's acquittal of Amitrano on the count relating to Griffin means that the evidence was insufficient to support Sanchez's conviction for committing gang assault against Griffin, since there was no evidence that anyone other than the three defendants participated in the crime, and, to reiterate, the statute requires that guilt be predicated on a finding that Sanchez was "aided" by at least two other persons.

The foregoing arguments are based on the theory that a person cannot be found to have "aided" a defendant in committing a gang assault unless the "aid[ing]" person is himself guilty of gang assault, whether as principal or accomplice (see Penal Law § 20.00 [a person is liable as an accomplice to another's conduct constituting an offense "when, acting with the mental culpability required for the commission (of such offense), he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct"]). Stated otherwise, it is Sanchez's position that a person cannot be found to have "aided" a defendant in committing a gang assault unless the aiding person shared the intent required to support a conviction for that crime (in this case, an intent to cause physical injury to Griffin). We disagree.

While there is relatively little case law explaining what it means to be "aided by two or more other persons actually present" in the gang assault context, the Legislature, in enacting the gang assault statutes (L 1996, ch 647, § 2), adapted this element from the statute defining robbery in the second degree, which provides that second-degree robbery includes forcible theft committed by a person while "aided by another person actually present" (Penal Law § 160.10 [1]; see Senate Mem in Support of L 1996, ch 647, reprinted in 1996 McKinney's Session Laws of NY, at 2582 [drawing an analogy between the proposed gang assault statutes and second-degree robbery "by a person who is aided by another actually present"]; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 120, 2008 Pocket Part, at 56).

The phrase "aided by another person actually present" in the robbery context describes an aggravating element that elevates

the crime of robbery in the third degree, a class D felony (Penal Law § 160.05), to robbery in the second degree, a class C felony. In enhancing the severity of the punishment to which a person committing a robbery with aid from another is subject, the Legislature recognized that the presence of another individual lending aid at the crime scene subjects the victim to significantly higher levels of danger and fear (*see People v Hedgeman*, 70 NY2d 533, 542 [1987]; *see also People v Dennis*, 146 AD2d 708, 708 [1989], *affd* 75 NY2d 821 [1990] [where the defendant robbed the victim "on the street, in full view of the driver" of the getaway car, "the driver's presence posed a sufficient threat of additional violence so as to satisfy the aggravating element necessary to raise the offense to second degree robbery"]). A similar purpose motivated the Legislature's adoption of the gang assault statutes in 1996, under which a person's commission of an assault resulting in serious injury "when aided by two or more other persons actually present" elevates the crime from assault in the third degree, a class A misdemeanor (Penal Law § 120.00 [1]), to gang assault in the second degree, a class C felony. The legislative memorandum in support of the bill enacting the gang assault statutes noted that "the joint action of numerous assailants is not only terrifying to victims but tends to increase the likelihood that severe or lethal injuries will be inflicted" (Senate Mem in Support of L 1996, ch 647, reprinted in 1996 McKinney's Session Laws of NY, at 2582).

Looking to second-degree robbery cases for guidance in resolving the issue presented by this gang assault case, we are persuaded by the decisions that have held that a person may be found to have "aided" another person's commission of an offense even if the aiding person did not have the intent required to be found guilty of participating in that offense. In *People v Green* (126 AD2d 105 [1987], *affd* 71 NY2d 1006 [1988]), the Second Department reinstated a verdict convicting Green of second-degree robbery based on his having been "aided" by his codefendant, Vizian, even though the same trial resulted in Vizian's acquittal. While one basis for the reinstatement of Green's conviction was that, contrary to the trial court's ruling setting aside the verdict, it was not repugnant to Vizian's acquittal under the instructions the jury had received (the correctness of which was not challenged), the Second Department further opined that "[t]he jury's finding of not guilty as to Vizian did not negative an element necessary to find [Green] guilty of robbery in the second degree" (126 AD2d at 110). The Second Department explained:

"We believe that it is both factually and legally possible to be an 'aider' in the statutory context without being a principal in the commission of the crime. Thus, we do not find that the jury verdict at bar acquitting Vizian was conclusive as to any element of the crime of robbery in the second degree with respect to [Green] . . .

"The Penal Law recognizes that one may aid in the commission of a crime without having the mental culpability necessary to be guilty of that crime as an accomplice. Penal Law § 115.00 (1) provides that

'[a] person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid:

"1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony'.

"The language of Penal Law § 160.10 (1) as compared to its predecessor, Penal Law of 1909 § 2124 (2)[,] reveals that criminal facilitation in the fourth degree (Penal Law § 115.00) may be considered sufficient to constitute aid within the context of Penal Law § 160.10 (1). Until the Penal Law was revised in 1965, the provision corresponding to 'aided by another person actually present' was 'aided by an *accomplice* actually present' (Penal Law of 1909 § 2124 [2]; emphasis supplied). We find this revision significant and believe that it reflects an intention by the Legislature to permit a much lesser degree of mental culpability to constitute aid under this robbery statute. Under the revised Penal Law, in order to be criminally liable as an accomplice one must act 'with the mental culpability required' for the commission of the principal crime (Penal Law § 20.00). Clearly, a person may knowingly aid in the commission of a crime, i.e., as a facilitator, and lack the requisite mental culpability for the commission thereof. As reflected in the aforementioned definition of an accomplice, such mental culpability was an essential element of the prior robbery statute.

The revision eliminated the need to establish that the greater degree of liability was present in the aider's conduct" (126 AD2d at 109-110, citing *People v Hampton*, 92 AD2d 490, 492-494 [1983, Silverman, J., dissenting in part], *affd* 61 NY2d 963 [1984]).[2]

We recognize that the Court of Appeals affirmed the Second Department in *Green* based on the lack of repugnancy in the verdict, determined "solely on a review of the trial court's charge regardless of its accuracy" (71 NY2d at 1008), and that the Court of Appeals further noted that, given the posture of the *Green* case on the appeal (in which, to reiterate, the charge's correctness was not challenged), the Second Department had no reason to engage in a factual analysis of the evidence (*id.*). In this case, however, the correctness of the trial court's charge is at issue, and Sanchez assiduously disclaims making any repugnancy argument. Thus, we are squarely faced with the question the Second Department addressed in the excerpt from *Green* quoted above, albeit in the context of gang assault rather than that of second-degree robbery. We find the *Green* analysis of this issue (which followed the analysis of the partially dissenting Justice at this Court in *Hampton* [92 AD2d at 492-494]) persuasive (*see also People v Harrison*, 141 AD2d 842, 842-843 [1988], *lv denied* 72 NY2d 1046 [1988] [following *Green* in holding that "one may aid in the commission of a crime without having the mental culpability necessary to be guilty of that crime as an accomplice"]; *People v Ward*, 107 AD2d 892, 894 [1985] [because the second-degree robbery statute "does not require that the person assisting share the perpetrator's intent," the Court concluded that "it was factually and legally possible for the jury to find only one defendant guilty in connection with the robbery"]). Accordingly, we hold that the jury was correctly instructed that an acquittal of one of the three defendants of all charges relating to one victim would not require that the other two defendants be acquitted of the gang assault charges relating to that victim.

---

**2.** That providing "aid[ ] . . . [while] actually present" is a concept distinct from accomplice liability is illustrated by *People v Hedgeman* (70 NY2d 533 [1987], *supra*), in which the Court of Appeals held that constructive presence at the crime scene, although sufficient to render a person liable as an accomplice, is insufficient to render a person an aider of a crime committed by another for purposes of convicting the latter person of second-degree robbery under Penal Law § 160.10 (1).

Further, on this record, the jury was entitled to conclude that Amitrano, while "actually present" at the scene, "aided" the assault on Griffin by Sanchez and Jurlina, even if the jury also concluded that Amitrano was not himself guilty of participating in the assault on Griffin either as a principal or as an accomplice. After all, the jury did convict Amitrano of committing third-degree assault against McCormack at the same time and place at which the other two defendants were assaulting Griffin, thus establishing that Amitrano was "actually present" at the scene of the incident (cf. People v Hedgeman, 70 NY2d at 535-536 [the requirement of the second-degree robbery statute that the aider be "actually present" excludes "a person who was only constructively present at the crime scene"]). As the People argue in their appellate brief, "by taking McCormack out of commission, Amitrano prevented McCormack from helping Griffin or otherwise thwarting Sanchez's attack on Griffin." The jury could rationally find that, while the People had proven that Amitrano's assault on McCormack had "aided" the other two defendants' assault on Griffin, the People had not proven beyond a reasonable doubt that Amitrano acted "with the intent to cause physical injury to Herbert Griffin," which the jury had been instructed was the intent required for conviction on the second-degree gang assault charge relating to Griffin. Thus, Sanchez's conviction of gang assault in the second degree is based on legally sufficient evidence. We also find, upon our review of the facts, that the conviction is not against the weight of the evidence.

The case law on which Sanchez relies does not persuade us to reach a different result. In People v Hampton (supra), a majority at this Court affirmed an order setting aside a verdict convicting Hampton of robbery in the second degree, and, on further appeal, the Court of Appeals affirmed that result solely on the ground that the conviction was repugnant to the same jury's acquittal of the codefendant who allegedly aided Hampton in committing the crime. The Court of Appeals noted that the issue in Hampton was the "repugnan[ce] [of the verdict] under the court's charge," which included an instruction that "if [the jury] found that either defendant did not act in concert with the other then it must acquit both defendants" (61 NY2d at 964). As in People v Green (supra), the Court of Appeals made clear in Hampton that "[t]he determination as to the repugnancy of the verdict is made solely on the basis of the trial court's charge and not on the correctness of those instructions" (id.). Hamp-

*ton*'s meaning as binding precedent is defined by the Court of Appeals' affirmance, not by the majority decision of this Court relied upon by Sanchez.

Similarly unavailing is Sanchez's reliance on this Court's decision in *People v Maldonado* (11 AD3d 114 [2004], *lv denied* 3 NY3d 758 [2004]), another repugnant verdict case. In *Maldonado*, we noted that the conviction of one defendant for second-degree robbery was repugnant to his codefendant's acquittal on that charge where "the court charged that the conduct and mental culpability of each of the defendants had to be sufficient to convict that person as an accomplice under Penal Law § 20.00" (11 AD3d at 118).[3] Our *Maldonado* decision does not discuss the correctness of the charge; rather, it discusses only whether the verdict returned by the jury was repugnant under that charge. Significantly, *Maldonado* distinguished *People v Green* (*supra*) on the ground that the *Green* jury—like the jury in this case—was *not* instructed that the aider had to have the same mental culpability as an accomplice (11 AD3d at 118). In any event, as previously noted, Sanchez assures us that he is not making a repugnancy argument.

In addition, Sanchez relies on *People v Coleman* (5 AD3d 956 [2004], *lv denied* 3 NY3d 638 [2004]), in which the Third Department reduced a conviction for robbery in the second degree to robbery in the third degree on the ground that there was insufficient evidence that the alleged aider intended to aid the defendant in the robbery. In so doing, the Court expressed the view that, for purposes of the second-degree robbery statute, "the aggravating element of being aided by one actually present requires some evidence of a shared intent to forcibly steal (*see* Penal Law § 20.00) or, at the very least, evidence of an intent by the aider to provide assistance to one who forcibly steals (*see* Penal Law § 115.00)" (5 AD3d at 959 [citations omitted]). We note that the latter clause and the accompanying citation to Penal Law § 115.00 (criminal facilitation in the fourth degree) suggest that the Third Department may not have meant to take the position in *Coleman* (contrary to the same Court's prior holding in *People v Ward* [*supra*]) that the aider is required to possess the same mental culpability as the defendant being

---

**3.** Notwithstanding the repugnancy of the verdict, we affirmed the conviction in *Maldonado* on the ground that the defendant waived the right to pursue the issue on appeal when he failed to object to the discharge of the jury before the court ruled on his motion to set aside the verdict (11 AD3d at 116-117, 118-119).

prosecuted. To the extent that *Coleman* may represent a departure from the *Ward* holding, we agree with *Ward* and respectfully disagree with *Coleman*.

 Sanchez also argues that the court's charge was errone-ous in that "no charge was given on what it means to 'aid' an assault." This argument refers to the court's instruction that "a person is actually present when such person is in a position to render immediate assistance to a person participating in the assault and is ready, willing and able to do so" (following CJI2d[NY] Penal Law § 120.06). Sanchez complains that this portion of the charge collapsed the definition of "aid" into the explanation of "actually present," and thereby may have led the jury to "conclude[ ] that it could convict [Sanchez] of gang as-sault if [Amitrano] was 'present' at the scene, even if [Ami-trano] did not 'aid' in the assault." This contention is unpre-served, as the defense never requested that the charge include a separate definition of "aid." Moreover, the defense did not object, beyond preserving "previously made" objections, when the court, in response to the jury's inquiry, stated that a gang assault conviction could be predicated on a finding that two defendants had attacked Griffin and one had attacked McCor-mack, so long as the jury found that "all the elements [of the offense] have been proven beyond a reasonable doubt." Alternatively, we find that the charge's lack of a separate defini-tion of "aid" (which the published Criminal Jury Instructions also lack) does not constitute reversible error, as the statute does not use the word "aid" in a technical sense differing from its meaning in ordinary usage.[4]

 We reject Sanchez's argument that the evidence was insuf-ficient to establish his criminal liability for causing Griffin's serious head injury so as to satisfy the statute's element of

---

4. In rejecting Sanchez's arguments on this point, we do not mean to sug-gest that it would not have been acceptable, or even preferable, for the charge to have included a separate definition of "aid." Nor do we mean to suggest that it would have been inappropriate for the court to respond to the jury's question by instructing it that, if two defendants were found to have attacked Griffin and one McCormack, the two who attacked Griffin could not be convicted of gang assault unless the third defendant's attack on McCormack had somehow "aided" the attack on Griffin (such as by preventing McCor-mack from coming to Griffin's aid). To reiterate, however, the defense did not request that the court give such a response. We also note that this is not a case in which the third alleged participant in the criminal activity (Amitrano) was exonerated of all charges; rather, he was convicted of third-degree assault against McCormack. Thus, under the jury's verdict, the three actors required for a gang assault conviction were involved in the incident.

"caus[ing] serious physical injury to such person" (Penal Law § 120.06). In this regard, Sanchez argues that the evidence establishes that the defendant who directly caused the serious physical injury to Griffin's head was Jurlina. Even if this characterization of the record is correct, the evidence still suffices to support the jury's finding that Sanchez caused serious physical injury to Griffin, as the jury was charged on the principles of accessorial liability under article 20 of the Penal Law, and was instructed that a guilty verdict on a gang assault charge relating to Griffin required proof that the defendant "personally *or by acting in concert with others* caused serious physical injury to Herbert Griffin" (emphasis added). Accordingly, the jury was entitled to find that Sanchez, by joining in the attack on Griffin with the requisite mental culpability, "intentionally aid[ed]" (Penal Law § 20.00) Jurlina in causing Griffin's serious physical injury, assuming that the evidence establishes that it was Jurlina who directly caused that injury. Sanchez's argument that "the general principles of accessorial liability do not apply to the gang assault statute" is both unpreserved and without merit (*see People v Hill*, 52 AD3d 380 [2008] [recognizing the application of principles of accessorial liability in a gang assault case]). Also unpreserved and without merit is Sanchez's related argument that the jury should have been instructed that a gang assault conviction required a unanimous finding as to which defendant directly caused the serious physical injury.

The court properly denied Sanchez's CPL 330.30 motion to set aside the verdict. With respect to the branch of the motion claiming newly discovered evidence, the evidence at issue could have been produced at trial by the exercise of due diligence, and such evidence would not have been likely to affect the verdict in any event. With respect to the branch of the motion claiming jury misconduct, the court conducted a thorough hearing, and the hearing evidence supports the court's findings.

We modify the sentence as indicated in the exercise of discretion.

We have considered and rejected Sanchez's remaining claims.

Accordingly, the judgment of the Supreme Court, New York County (Roger S. Hayes, J.), rendered May 7, 2007, convicting defendant-appellant Matthew Sanchez, after a jury trial, of gang assault in the second degree, and sentencing him to a term of eight years, with five years' postrelease supervision, should be modified, as a matter of discretion in the interest of justice, to

reduce the term of imprisonment to six years, and otherwise affirmed.

MAZZARELLI, J.P., BUCKLEY, SWEENY and RENWICK, JJ., concur.

Judgment, Supreme Court, New York County, rendered May 7, 2007, modified, as a matter of discretion in the interest of justice, to reduce the term of imprisonment to six years, and otherwise affirmed.