THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LYMAN GREEN, Respondent.

Second Department, March 2, 1987

### APPEARANCES OF COUNSEL

*John J. Santucci, District Attorney (Steven Weinberg* of counsel), for appellant.

*Alan Kudisch* for respondent.

### OPINION OF THE COURT

Per Curiam.

The defendant was found guilty upon a jury verdict of robbery in the second degree, assault in the second degree and criminal possession of stolen property in the second degree after trial upon a multiple-count indictment. A codefendant indicted and tried jointly with the defendant was acquitted on all counts submitted to the jury. The trial court granted the defendant's motion to set aside the verdict with respect to the robbery and assault counts on the ground that the codefendant's acquittal rendered the verdict of guilty as to those counts repugnant. On this appeal, we are called upon to determine whether the verdict finding the defendant guilty of robbery in the second degree on the theory of being aided by another person actually present (Penal Law § 160.10 [1]) was repugnant to the codefendant's acquittal of robbery. We conclude that one may aid in the commission of a robbery within the meaning of Penal Law § 160.10 (1) without engaging in conduct sufficient to support a finding of guilt on the basis of accessorial liability. Thus, it was factually and legally possible to find only this defendant guilty in connection with the robbery. The order of the trial court setting aside the verdict finding the defendant guilty of robbery in the second degree and assault in the second degree and dismissing those counts of the indictment is therefore reversed. We turn first to a brief review of the facts.

On May 4, 1984, at about 10:00 P.M., the defendant Lyman Green and codefendant Harold Vizian entered the apartment of John Matlock located in Long Island City, Queens County. Upon gaining entry, Vizian, a former boarder of Matlock's, produced a vise from a bag he was carrying and offered to sell it to Matlock for $35. Following an inspection of the vise,

Matlock claimed he was not interested. A reduction in the sales price of the vise failed to alter Matlock's refusal. Thereafter, Matlock told the intruders to leave his apartment. The defendant refused to leave and instead assaulted Matlock while repeatedly demanding money from him. Meanwhile, Vizian had closed the apartment door and remained in the apartment observing the altercation between Matlock and the defendant.

In the course of this encounter, the defendant threatened Matlock with a penknife which he had obtained from Matlock's pants pocket. The struggle continued until the defendant noticed a wallet in Matlock's pants pocket. The defendant ripped the entire pocket off Matlock's pants, took the wallet and then fled from the apartment. Vizian had left the apartment while Matlock and the defendant were engaged in the altercation and prior to the defendant's theft of Matlock's wallet.

Shortly thereafter the police apprehended both the defendant and Vizian in the vicinity of Matlock's apartment. They were subsequently charged in a single indictment with robbery in the first degree, robbery in the second degree, burglary in the first degree, assault in the second degree, criminal possession of stolen property in the second degree and criminal possession of a weapon in the third degree. The second count of the indictment charging robbery in the second degree reads as follows: "The defendants, each aiding the other, on or about May 4, 1983, in the County of Queens, being aided by another person actually present, forcibly stole certain property, to wit: a quantity of United States currency and a wallet from John Matlock".

In submitting the case to the jury for deliberations, the Trial Judge instructed the jury to analyze the evidence with respect to the defendant and his codefendant individually and to determine their verdicts as to each individually and separately. The jury found the defendant guilty of robbery in the second degree, assault in the second degree and criminal possession of stolen property in the second degree and found him not guilty of robbery in the first degree and burglary in the first degree. The count of criminal possession of a weapon in the third degree was dismissed. Vizian was acquitted of all charges.

Immediately after the verdict was rendered, the defendant's attorney moved, *inter alia,* to have the jury's verdict finding

the defendant guilty of robbery in the second degree set aside as repugnant to the codefendant's acquittal of the robbery charges. The defense counsel contended that it was legally impossible to find the defendant guilty of robbery in the second degree under Penal Law § 160.10 (1) on the theory of being aided by another person actually present while acquitting the codefendant. According to the defense counsel, Vizian's acquittal necessarily entailed a finding that he did not provide the aid necessary for the defendant to have committed robbery in the second degree. Criminal Term agreed with the defense counsel and set aside the robbery conviction. The trial court also set aside as repugnant the conviction for assault in the second degree charged under Penal Law § 120.05 (6), i.e., assault committed "[i]n the course of and in furtherance of the commission or attempted commission of a felony * * * or * * * immediate flight therefrom". Because no felony conviction remained upon which the assault conviction could be premised, the conviction on that count could not stand. This appeal by the People ensued.

The Court of Appeals in *People v Tucker* (55 NY2d 1, 4) declared that "[w]hen there is a claim that repugnant jury verdicts have been rendered in response to a multiple-count indictment, a verdict as to a particular count shall be set aside only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury". In ruling on repugnancy claims the *Tucker* court opined that it was not appropriate for the court to review the entire trial record in an effort to second-guess the jury's mental processes or to resolve inconsistencies in the verdict. Rather, the court set forth a definitive standard which limits the court's review of the record to "the jury charge so as to ascertain what essential elements were described by the trial court; then, the assertedly inconsistent verdicts will be harmonized on the basis of the jury charge. Under this approach, a conviction will be reversed only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered" *(People v Tucker, supra,* at 7).

Thus, under the broad language of *Tucker* a verdict may be set aside as repugnant only in those instances where examination of the jury instructions reveals that the verdict is inherently inconsistent in light of the elements of the crimes charged. Neither the legal accuracy of the charge nor the particular facts of the case are controlling *(see, People v*

*Tucker, supra,* at 7; *see also, People v Goodfriend,* 64 NY2d 695; *People v Zuziela,* 98 AD2d 161, 164-165).

Applying this standard of review to the case at bar, we conclude, contrary to Criminal Term, that the rendered verdicts are not repugnant. As already noted, the trial court instructed the jury that it was to consider its verdicts as to the crimes charged separately as to each defendant. Amplifying its instruction to the jury the trial court stated: "The fact that you may find one defendant guilty or not guilty of one of the crimes submitted to you should not control your verdict with respect to the other defendant". Although, at first blush, the verdict finding the defendant guilty of robbery in the second degree while finding Vizian not guilty of the same charge might seem illogical in light of the evidence, the court's instructions did not require that both the defendant and Vizian be found guilty of robbery in the second degree in order for either party to be found guilty of that offense. Accordingly, the verdict returned is not inherently contradictory *(cf., People v Hampton,* 92 AD2d 490, *affd* 61 NY2d 963).

Our analysis does not stop there. The question remains whether the acquittal of Vizian negatived an element of the crime of robbery in the second degree of which the defendant was convicted. Refining the issue still further, the dispositive question is whether a person who "aids" one committing a robbery within the meaning of Penal Law § 160.10 (1) is guilty as a principal on the basis of accessorial liability. We believe that it is both factually and legally possible to be an "aider" in the statutory context without being a principal in the commission of the crime. Thus, we do not find that the jury verdict at bar acquitting Vizian was conclusive as to any element of the crime of robbery in the second degree with respect to the defendant and rule that Criminal Term erred in vacating the robbery and assault convictions as repugnant.

The Penal Law recognizes that one may aid in the commission of a crime without having the mental culpability necessary to be guilty of that crime as an accomplice. Penal Law § 115.00 (1) provides that

"[a] person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid:

"1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony".

The language of Penal Law § 160.10 (1) as compared to its predecessor, Penal Law of 1909 § 2124 (2) reveals that criminal facilitation in the fourth degree (Penal Law § 115.00) may be considered sufficient to constitute aid within the context of Penal Law § 160.10 (1). Until the Penal Law was revised in 1965, the provision corresponding to "aided by another person actually present" was "aided by an *accomplice* actually present" (Penal Law of 1909 § 2124 [2]; emphasis supplied). We find this revision significant and believe that it reflects an intention by the Legislature to permit a much lesser degree of mental culpability to constitute aid under this robbery statute. Under the revised Penal Law, in order to be criminally liable as an accomplice one must act "with the mental culpability required" for the commission of the principal crime (Penal Law § 20.00). Clearly, a person may knowingly aid in the commission of a crime, i.e., as a facilitator, and lack the requisite mental culpability for the commission thereof. As reflected in the aforementioned definition of an accomplice, such mental culpability was an essential element of the prior robbery statute. The revision eliminated the need to establish that the greater degree of liability was present in the aider's conduct (see generally, *People v Hampton,* 92 AD2d 490, 492-494, *supra* [Silverman, J., dissenting]).

Turning to the facts of the matter before us, it is entirely possible that the jury found that Vizian aided the defendant in the commission of the robbery by providing the means or opportunity while at the same time finding that he did not participate in the robbery or possess the criminal intent necessary to commit the crime. The testimony elicited in the trial established that Vizian closed the door and remained in front of it, thereby blocking Matlock's exit. His conduct furnished the opportunity for the defendant to rob Matlock. The evidence also proved circumstantially that Vizian knew it was probable that his actions would aid the defendant to commit a crime against Matlock. Nevertheless, the jury's acquittal indicates that they had a reasonable doubt as to whether Vizian had the mental culpability sufficient to be found guilty as an accomplice. Our reading of Penal Law § 160.10 lends to the conclusion that Vizian's acquittal does not render the verdict against the defendant repugnant. The jury's finding of not guilty as to Vizian did not negative an element necessary to find the defendant guilty of robbery in the second degree.

Review of the decisional law with respect to this issue

reveals an apparent division of authority among the intermediate appellate courts of this State. In *People v Hampton* (92 AD2d 490, 491, *supra*), the Appellate Division, First Department, ruled that an "aider" within the meaning of Penal Law § 160.10 (1) must be a principal in the commission of that crime. *Hampton* is factually distinct from the instant case insofar as the trial court instructed the jury in *Hampton* that both defendants had to be found guilty or neither could be. The jury returned a verdict of guilty as to one defendant and not guilty as to the codefendant. The trial court set aside the verdict on the ground that it was repugnant and the Appellate Division affirmed. The Court of Appeals ultimately affirmed the determination of the Appellate Division but did so on the basis that "an examination of the instructions given to the jury in this case shows that the verdict returned was inherently contradictory" *(People v Hampton,* 61 NY2d 963, 964, *supra).* No mention was made of whether the charge as given was proper, nor that any impropriety in the instructions would have altered the result. This all or nothing type of jury instruction was not given in the matter before us and, therefore, no inherent inconsistency exists.

In rejecting our decision in *People v Fallon* (78 AD2d 659) as controlling the result at bar, a factual distinction must also be drawn. In *Fallon,* the defendant kicked the complainant, knocking the wallet he was holding and the complainant's money to the ground. The defendant and his two codefendants absconded with the money. The trial court charged the jury on both robbery and accessorial liability. The jury convicted the defendant of robbery but convicted the two codefendants only of the lesser offense of petit larceny. In affirming the order setting aside the defendant's robbery conviction as repugnant, we found that "[i]n the teeth of an instruction on accessorial liability, the codefendants' acquittal of robbery necessarily entailed a finding that they did not aid or abet appellant in his commission of the robbery. The fact that the codefendants were found to have stolen property from the complainant does not, without more, establish that they rendered the requisite aid" *(People v Fallon, supra,* at 660). Conversely, in this proceeding, the charge to the jury did not make the conviction of the defendant dependent upon the conviction of Vizian. Nor was the charge improper inasmuch as Vizian's conduct provided the defendant with the opportunity for the commission of the robbery.

The decisions of the Appellate Division, Third Department, are somewhat difficult to reconcile with each other. In *People v Tucker* (59 AD2d 953) and *People v Ward* (107 AD2d 892), the Third Department held that it was legally and factually possible for one defendant to be convicted of robbery in the second degree when a codefendant is acquitted of the same charge. The *Ward* court specifically based its decision on its finding that the definition of the pertinent statute at issue did not require that the "aider" share the perpetrator's intent.

In an apparent retreat from that position, the Third Department in *People v Whalen* (99 AD2d 883) reduced a conviction of attempted robbery in the second degree to attempted robbery in the third degree on the ground that that verdict was inconsistent with one codefendant's acquittal of that charge and another codefendant's conviction only of the lesser offense of attempted robbery in the third degree, citing *People v Hampton (supra)* and *People v Fallon (supra)*.

On the appeal of one of Whalen's codefendants, the Third Department, while affirming the conviction, adhered to the reasoning of *People v Whalen (supra; see, People v Reddy,* 108 AD2d 945). Unlike in *Whalen*, however, the codefendant was convicted of attempted robbery in the third degree which does not include the element of being aided by another.

The two positions presented appear diametrically opposed. Because we have distinguished the decisions in *People v Fallon (supra)* and *People v Hampton (supra)* from the instant case, we do not believe that our conclusion herein is necessarily contrary to the position of the Third Department espoused in *People v Whalen (supra)* and *People v Reddy (supra)*.

In sum, we conclude that the conviction of the defendant of robbery in the second degree, requiring the aid of another person actually present, is not repugnant to the codefendant's acquittal of that crime where the jury does not receive instructions that the acquittal of one requires the acquittal of the other. It is entirely possible under the facts presented that the jury had a reasonable doubt as to the codefendant's mental culpability. Accordingly, the order appealed from should be reversed and the verdict reinstated.

THOMPSON, J. P., LAWRENCE, RUBIN and KUNZEMAN, JJ., concur.

Ordered that an order of the Supreme Court, Queens County, dated December 20, 1983, is reversed, on the law, the defendant's motion to set aside the jury's verdict finding him guilty of robbery in the second degree and assault in the second degree is denied, and the matter is remitted to the Supreme Court, Queens County, for sentencing on those counts.