[921 NE2d 570, 893 NYS2d 803]

The People of the State of New York, Respondent, v Matthew Sanchez, Appellant.

The People of the State of New York, Respondent, v Larry Mynin, Appellant.

Argued October 21, 2009; decided December 1, 2009

## POINTS OF COUNSEL

*Dershowitz, Eiger & Adelson, P.C.,* New York City (*Nathan Z. Dershowitz, Amy Adelson* and *Daniela Elliott* of counsel), for appellant in the first above-entitled action. I. The jury charge on gang assault was erroneous as a matter of law. (*People v Hedgeman,* 70 NY2d 533; *People v Ledwon,* 153 NY 10; *People v Bennett,* 49 NY 137; *People v Gray,* 86 NY2d 10; *People v Jean-Baptiste,* 38 AD3d 418; *People v Kleingartner,* 183 Misc 2d 771; *People v Hampton,* 92 AD2d 490, 61 NY2d 963; *People v Coleman,* 5 AD3d 956; *People v Green,* 126 AD2d 105, 71 NY2d 1006; *People v Harris,* 271 AD2d 258.) II. The evidence was insufficient because there were only two participants in the assault on Herbert Griffin and because Matthew Sanchez did not cause Griffin's serious physical injury. (*People v Hedgeman,* 70 NY2d 533; *People v Coleman,* 5 AD3d 956; *People v Fallon,* 78 AD2d 659; *People v Fowler,* 31 AD3d 784; *People v Maldonado,* 11 AD3d 114; *People v Wright,* 189 AD2d 612; *People v Kleingartner,* 183 Misc 2d 771; *People v Santos,* 14 AD3d 411; *People v Villanueva,* 35 AD3d 229; *People v Fatal,* 187 Misc 2d 334.) III. The court erred in allowing the prosecutor to cross-examine Matthew Sanchez and his character witness about Sanchez's history at the United States Naval Academy at Annapolis, and in charging the jury that it could consider that history in evaluating Sanchez's credibility. (*People v Lediard,* 80 AD2d 237; *People v Brinkworth,* 112 AD2d 799; *People v Sandoval,* 34 NY2d 371; *People v Bilanchuk,* 280 App Div 180; *People v Perez,* 40 AD3d 1131; *People v Jarrells,* 190 AD2d 120; *People v*

*Randolph,* 18 AD3d 1013.) IV. The conviction should be vacated because the People committed numerous *Rosario* violations, and the court's remedy—a watered down "adverse inference" charge—did not cure the prejudice. (*People v Rosario,* 9 NY2d 286; *People v Kelly,* 62 NY2d 516; *People v Wallace,* 76 NY2d 953; *People v Martinez,* 71 NY2d 937; *People v Joseph,* 86 NY2d 565; *People v Davis,* 18 AD3d 1016.)

*Robert M. Morgenthau, District Attorney,* New York City (*Gina Mignola* and *Amyjane Rettew* of counsel), for respondent in the first above-entitled action. I. The court correctly charged the jury that, to convict defendant of gang assault, an "aider" need not share the mental culpability of a full-fledged accomplice. (*People v Green,* 126 AD2d 105, 71 NY2d 1006; *People v Hampton,* 61 NY2d 963; *People v Fowler,* 31 AD3d 784; *People v Maldonado,* 11 AD3d 114; *People v Harrison,* 141 AD2d 842; *People v Ward,* 107 AD2d 892; *People v Mynin,* 58 AD3d 581, 12 NY3d 857; *People v Fallon,* 78 AD2d 659; *People v Coleman,* 5 AD3d 956; *People v Munroe,* 190 NY 435.) II. Defendant's unpreserved miscellaneous claims about the court's charge and the sufficiency of the proof have no merit. (*People v Casmento,* 155 AD2d 229; *People v Hawkins,* 11 NY3d 484; *People v Gray,* 86 NY2d 10; *People v Jean-Baptiste,* 38 AD3d 418; *People v Hines,* 97 NY2d 56; *People v Ford,* 11 NY3d 875; *People v Finger,* 95 NY2d 894; *People v Lawrence,* 85 NY2d 1002; *People v Tucker,* 55 NY2d 1; *People v Wilkerson,* 189 AD2d 592.) III. Defendant's remaining contentions are not properly before the Court and are entirely without merit. (*People v Sandoval,* 34 NY2d 371; *People v Sorge,* 301 NY 198; *People v Walker,* 83 NY2d 455; *People v Canty,* 60 NY2d 830; *People v Pollock,* 50 NY2d 547; *People v Williams,* 12 NY3d 726; *People v Hayes,* 97 NY2d 203; *People v Bilanchuk,* 280 App Div 180; *People v Coleman,* 56 NY2d 269; *People v Perez,* 40 AD3d 1131.)

*Office of the Appellate Defender,* New York City (*Alexis Agathocleous* and *Richard M. Greenberg* of counsel), for appellant in the second above-entitled action. The trial court erroneously responded to a jury inquiry by stating that a single defendant could be convicted of gang assault without the conviction of his alleged accomplices, particularly where it also instructed the jury that the case was governed by the accessorial liability standard. (*People v Sanchez,* 57 AD3d 1; *People v Coleman,* 5 AD3d 956; *People v Hicks,* 134 AD2d 909; *People v Ward,* 107 AD2d 892; *People v Fallon,* 78 AD2d 659; *People v Munroe,* 190 NY 435; *People v Maldonado,* 11 AD3d 114; *People v Hampton,* 92

AD2d 490, 61 NY2d 963; *People v Green,* 126 AD2d 105; *People v Alfaro,* 66 NY2d 985.)

*Robert M. Morgenthau, District Attorney,* New York City (*Mark Dwyer* of counsel), for respondent in the second above-entitled action. The trial court properly charged that defendant could be convicted of gang assault even if those who aided him in the assault did not share his intent to cause physical injury. Moreover, the verdict as to the various defendants was not inconsistent, and was not in any way at odds with the court's charge on accomplice liability. (*People v Finnegan,* 85 NY2d 53, 516 US 919; *People v Ryan,* 82 NY2d 497; *People v Sanchez,* 57 AD3d 1; *People v Green,* 126 AD2d 105, 71 NY2d 1006; *People v Harrison,* 141 AD2d 842; *People v Ward,* 107 AD2d 892; *People v Hampton,* 61 NY2d 963; *People v Munroe,* 190 NY 435; *People v Maldonado,* 11 AD3d 114; *People v St. Paul,* 3 AD3d 604.)

**OPINION OF THE COURT**

PIGOTT, J.

These appeals involve New York's "gang assault" statutes, which apply when a person, who intends to cause "physical injury" to another, causes that person or a third person "serious physical injury" and is "aided by two or more other persons actually present" (Penal Law §§ 120.06, 120.07). At issue in these cases is whether the two or more persons who provide aid must also share the criminal intent of the defendant. We find that the statutes' language and history establish that they do not.

### People v Sanchez

On New Year's Eve 2004, at a bar on Second Avenue in Manhattan, the owner, Liam McCormack, announced "last call" and turned up the lights to encourage the patrons to leave. Shortly before that time, Herb Griffin, a police detective and a friend of McCormack's, had arrived.

McCormack placed his keys in the door and, as patrons left, unlocked and then relocked the door. Defendant, along with codefendants Anthony Amitrano and Nenad Jurlina, left the bar. McCormack would not let defendant leave with a drink and, after some resistance, defendant handed his drink to him. Shortly thereafter, McCormack noticed that his keys were gone from the door. A man outside observed defendants take the keys and told McCormack what had happened. McCormack ran after them. Griffin went to help McCormack, who was about a block and a half ahead.

When McCormack caught up to the men, an altercation ensued. According to McCormack, he asked for his keys back and defendant threw them at his face. In response, McCormack punched defendant in the mouth.

Griffin finally caught up. He saw that McCormack had his keys, and said they should get out of there. As they walked away, a bottle was thrown from behind McCormack and Griffin and broke next to them. They turned around, and defendants came towards them.

Amitrano went towards McCormack, while defendant and Jurlina approached Griffin. Defendant punched Griffin in the face. Griffin dropped to the ground and tried to protect himself but was then beaten, punched and kicked by defendant and at least one other. McCormack was also attacked by at least two of the men.

The police arrived at the scene. Defendant and Jurlina were immediately arrested. Amitrano was told to go home, but was eventually arrested. Both McCormack and Griffin were injured; Griffin the more seriously, suffering fractures to the skull and face.

Defendant and his codefendants admitted that they were involved in the altercation, but claimed they were innocent victims of unprovoked violence by McCormack and Griffin. Two witnesses who observed the fight, however, testified that McCormack and Griffin tried to get away and neither of them fought back.

Defendants were indicted for gang assault in the first degree (Penal Law § 120.07) and attempted gang assault in the first degree (Penal Law §§ 110.00, 120.07). At trial, there was considerable debate over the jury instructions as they pertained to the gang assault charge. Defendant took the position that each of the two aiding persons must also be an accomplice who shared the principal's specific criminal intent. He also asserted that, if the jury acquitted any defendant, that defendant could not be considered an "aider" of the other two. To the defense, an acquittal of one was an acquittal for all three as to gang assault. In response, the People argued that every defendant is responsible for his own mens rea, so that an individual defendant's guilt should turn on his own mental state, and not that of the persons who aided him. The judge adopted the People's view and instructed the jury:

"Actually present is exactly the same, a person is

actually present when such person is in a position to render immediate assistance to a person participating in the assault and is ready, willing and able to do so *irrespective of whether such person intended to cause physical injury*.

"Because of this definition of actually present, *even if you find an individual defendant not guilty of this crime, because the People have not proven beyond a reasonable doubt that he had the intent required for the commission of the crime, you can still find another defendant or defendants guilty if you find that the not guilty defendant was actually present* as [the court] defined that term and that all the elements of the crime are proven by the People beyond a reasonable doubt" (emphasis added).

During deliberations, the court reiterated its position while responding to two jury notes, stating:

"If [the jurors] find that the People have proven beyond a reasonable doubt each of the elements of Gang Assault in the First Degree, as to a particular defendant then the fact that two men were on Griffin and one on McCormack can constitute Gang Assault in the First Degree."

The jury acquitted all three defendants of first-degree gang assault, but convicted defendant and Jurlina of gang assault in the second degree. The jury acquitted Amitrano of any conduct relating to Griffin, and convicted him of misdemeanor assault in the third degree relating to McCormack. Defendant was sentenced to eight years' imprisonment with five years' post-release supervision.

On defendant's appeal, the Appellate Division modified his sentence in the exercise of discretion to six years and otherwise affirmed (57 AD3d 1 [1st Dept 2008]). The court held that the jury was correctly instructed that an acquittal of one of the three defendants of all charges relating to one victim would not require that the other two defendants be acquitted of the gang assault charges as to that victim (*id.* at 5-7). The court further held that there was record support for the jury's conclusion that Amitrano, while "actually present" at the scene, "aided" the assault on Griffin by defendant and Jurlina, "even if the jury also concluded that Amitrano was not himself guilty of participating in the assault on Griffin either as a principal or as an

accomplice" (*id.* at 10). The court noted that Amitrano was convicted of assaulting McCormack, and that by "taking Mc-Cormack out of commission, Amitrano prevented McCormack from helping Griffin or otherwise thwarting Sanchez's attack on Griffin" (*id.*).

A Judge of this Court granted defendant leave to appeal (12 NY3d 762 [2009]).

### *People v Mynin*

In August 2005, defendant and three other men drove to 151st Street in Manhattan to purchase $1,600 worth of marijuana. Darnell Moore took their money and returned with fake marijuana. Defendant detected the fraud and challenged Moore. A struggle ensued between Moore, defendant and the three men, which involved their attempt to get Moore into the vehicle. During the struggle, Moore was fatally shot, the bullet penetrating his chest and several vital organs. Defendant and the three men were chased down by the police. Just before the stop, someone in the car threw out the pistol that had been used to kill Moore, but the police recovered it. At the precinct, defendant told the police that he and his three companions had attacked Moore "looking for the money" and that the gun "went off."

Defendant was indicted for attempted kidnapping in the first degree, felony murder in the second degree, and gang assault in the second degree. Indicted on the same charges were the other men involved in the incident. The case against the defendants was tried twice. The first jury was unable to reach a verdict on any count as to any of the defendants, and a mistrial was declared in June 2006. In January 2007, the case was retried.

At the beginning of the court's jury charge, the court instructed the jury generally on accomplice liability. As it pertained to the gang assault charge in particular, the judge instructed the jury:

> "A person is guilty of gang assault in the second degree, when with intent to cause physical injury to another person, and when aided by two or more other persons actually present, he causes at least serious physical injury to such person.

> "In order to find a defendant guilty of this crime, the People must prove beyond a reasonable doubt each of the following three elements:

"First, that on or about August 25th, 2005 in the county of New York the defendant or a person with whom he was acting in concert caused serious physical injury to Darnell Moore. . . .

"The second element is that the defendant himself, *that is the defendant whose liability you are considering,* acted with the intent to cause at least physical injury to Darnell Moore. . . .

"The third element is that defendant was aided by two or more persons actually present. *This is separate from my general instructions on acting in concert.* This is an element of this charge that the defendant was aided in some way by two or more persons actually present.

"A person is actually present when he's in a position to render immediate aid to a person participating in the assault and is ready, willing, and able to do so" (emphasis added).

During deliberations, the jury returned a note asking if "fewer than three people [can] be convicted on a charge of gang assault." Defense counsel argued that each defendant must have the intent to cause physical injury, so at least three would need to be convicted. The prosecutor argued, by contrast, that fewer than three people could be convicted under the statute because an individual may provide aid but not have the particular intent required by the gang assault statute. The court agreed with the People and instructed the jury that fewer than three people could be convicted on a charge of gang assault.

The jury returned another note asking, "Do you need three or more defendants to have intent to cause physical injury or does just one defendant have to have the intent plus two or more others that aid but don't have intent to cause physical injury?" After some more discussion between the attorneys, the court instructed the jury that "you do not need three or more defendants to have intent to cause physical injury."

The jury acquitted all of the codefendants on all of the charges and acquitted defendant of both felony murder and attempted kidnapping. Defendant was convicted of a single count of gang assault in the second degree.

On defendant's appeal, the Appellate Division affirmed (58 AD3d 581 [1st Dept 2009]). As relevant to this appeal, the court held that Supreme Court correctly instructed the jury that in

order to convict a defendant of gang assault it was not obligated to convict any other defendants of that crime, and that a person may be "aided by two or more other persons actually present" even if those persons lack the mental culpability to be guilty as accomplices under Penal Law § 20.00 (*id.* at 582). It further held that "[t]he court's instructions, viewed as a whole, properly distinguished between the concepts of 'aiding' and 'acting in concert,' and were not confusing" (*id.*).

The court found that defendant did not preserve his contention that the verdict finding him guilty of gang assault while acquitting all the codefendants was repugnant, and declined to review it in the interest of justice (*id.*). As an alternative holding, the court also rejected it on the merits (*id.*). The court held that Supreme Court's charge clearly permitted the mixed verdict at issue (*id.*). Furthermore, the court found that

> "the fact pattern permitted the jury to conclude that the codefendants, who were 'actually present' at the scene, 'aided' defendant's assault of the victim for purposes of satisfying the gang assault statute, even if the codefendants were not themselves guilty of participating in the assault either as principals or as accomplices. Moreover, the jury could have found that there were multiple participants, while also finding, 'however illogically,' . . . a lack of proof of the identity of the particular codefendants as being those participants" (*id.*, citing *People v Maldonado*, 11 AD3d 114, 118 n [1st Dept 2004], *lv denied* 3 NY3d 758 [2004]).

A Judge of this Court granted defendant leave to appeal (12 NY3d 857 [2009]).

## Analysis

The law making "gang assault" a crime was enacted in 1996 and contains two degrees of severity (L 1996, ch 647, § 2). Gang assault in the first degree is defined as follows: "A person is guilty of gang assault in the first degree when, with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person" (Penal Law § 120.07). Gang assault in the second degree is defined identically, except that it requires the accused to act with the lesser intent to cause physical injury: "A person is guilty of gang assault in the second degree when, with intent to cause

physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person" (Penal Law § 120.06).

Both crimes require that the defendant be "aided by two or more other persons actually present" and the proper interpretation of that phrase is the core issue on this appeal.

The gang assault statutes were modeled in part on the crime of robbery in the second degree (Penal Law § 160.10 [1]). In particular, the element of "aided by two or more other persons actually present" is taken from the current robbery statute, which requires the defendant to be "aided by another person actually present" (see Penal Law § 160.10 [1]).

The robbery statute once required that the defendant be "aided by an accomplice actually present." (Penal Law of 1909 § 2124 [2].) That requirement was revised when the Legislature replaced the word "accomplice" with the phrase "another person" (see Penal Law § 160.10 [1]). The deliberate revision to the robbery statute has been viewed by some courts, including the Appellate Division in *Sanchez*, as showing a clear intention by the Legislature to establish that for the crime of robbery, the aider need not share the specific intent and mental culpability required for accomplice liability (see also *People v Green*, 126 AD2d 105, 106 [2d Dept 1987] [concluding that "one may aid in the commission of a robbery within the meaning of Penal Law § 160.10 (1) without engaging in conduct sufficient to support a finding of guilt on the basis of accessorial liability"]). In other words, a defendant can be found guilty of the crime of robbery in the second degree even when his codefendant is acquitted.

This Court, analyzing the language "aided by another person actually present" in the robbery statute, has held that "constructive presence" is insufficient to sustain a conviction (*People v Hedgeman*, 70 NY2d 533 [1987]). In *People v Dennis* (75 NY2d 821 [1990]), we further explained that when another person is in a position to render immediate assistance to the defendant, his or her presence poses a sufficient risk of additional violence, so as to satisfy the element of another person "actually present."

Thus, for the purposes of the element "another person actually present" in the robbery statute, the other person must actually be present, at least in the immediate vicinity of the crime, and be capable of rendering immediate assistance to an individual committing the crime. The interpretation of the

robbery statute is equally applicable to the similarly worded gang assault statutes.

Before anything else, we must look to the language of the gang assault statutes. Each statute, on its face, speaks only to the intent of the defendant and not to his aiders. No particular mental state is expressly required of those who comprise the gang. They must simply be present and render aid to the defendant. The Legislature did not provide that they must share defendant's intent to cause physical injury.

This interpretation is also supported by the legislative history of the statutes, which reveals that the purpose of the gang assault crime was "to enhance public safety . . . in recognition of the severity of assaults committed by gangs" (Governor's Program Bill Mem, at 1, Bill Jacket, L 1996, ch 647, at 6, 1996 NY Legis Ann, at 476). Gang assaults, particularly by youths, had been increasing, and such assaults "pose a greater threat to public safety than assaults committed by individual actors" (Governor's Mem approving L 1996, ch 647, 1996 McKinney's Session Laws of NY, at 1919). The Governor's supporting memorandum noted that "the joint action of numerous assailants is not only terrifying to victims but tends to increase the likelihood that severe or lethal injuries will be inflicted" (Governor's Program Bill Mem, at 2, Bill Jacket, L 1996, ch 647, at 7, 1996 NY Legis Ann, at 476-477). The Governor's supporting memorandum recognized "that to commit an assault with the aid of others is tantamount to committing an assault by means of a deadly weapon or dangerous instrument" (*id.*).

Thus, one of the primary purposes of the crime of gang assault was to recognize that when a victim is confronted by a group of individuals, rather than one individual, he or she is confronted with a more threatening, intimidating and dangerous situation that increases the possibility of escalating violence and physical harm (*see Hedgeman*, 70 NY2d at 541). That enhanced fear is present even if the "aider" does not have the same criminal intent or purpose of the defendant. So long as a person is "aiding" another to commit the crime, regardless of whether that aid is rendered with the intent to cause physical injury, the victim is still facing a more threatening scenario. In other words, even though the person may not have the intent to cause physical injury to the victim, they are still aiding the

defendant for purposes of the statute by assisting defendant in causing that harm.*

Even more, gang assaults are often spontaneous and frenzied events undertaken by a number of individuals, many of whom may never be identified. They are dangerous precisely for their chaotic nature. Therefore it makes sense for the Legislature to require the People to prove only that the charged defendant, not other participants in the assault, had the requisite criminal intent to cause physical injury.

■ Thus, we hold that a defendant can be found guilty of gang assault, if he or she acts with the requisite mens rea and aid, even if one or more of the persons who aid do not share his or her intent to cause physical harm. Contrary to the dissent's suggestion, we do not hold today that no mens rea is required of an aider. The only issue presented by defendants is whether the persons who provide aid must share the mental culpability of defendant. We thus have no occasion to define the exact intent needed, if any, of the persons aiding the defendant. We now turn to each particular case.

## People v Sanchez

■ The court properly instructed the jury that for the gang assault charge, the defendant may be found guilty if he acts with the intent to cause physical injury, whether or not those who aided him in the assault shared the same intent.

■ Viewing the evidence in the light most favorable to the People, it was reasonable for the jury to conclude that Amitrano and Jurlina aided the defendant in the commission of the gang assault on Griffin. There was some evidence at trial that both Amitrano and Jurlina actually joined in on the assault of Griffin. In that way, both Amitrano and Jurlina aided in the assault. Even if Amitrano did not attack Griffin, he attacked McCormack and prevented McCormack from intervening in defendant's attack on Griffin. This provided an additional basis for

---

* Indeed, the accomplice statute expressly states that one who merely aids the commission of a crime may not be an accomplice, but instead may be guilty of a lesser offense. In particular, Penal Law § 20.10 provides:

"a person is not criminally liable for conduct of another person constituting an offense when his own conduct, though causing or *aiding* the commission of such offense, is of a kind that is necessarily incidental thereto. If such conduct constitutes a related but separate offense upon the part of the actor, he is liable for that offense only and not for the conduct or offense committed by the other person" (emphasis added).

the jury to find that Amitrano was acting in aid of defendant's effort to injure Griffin. Accordingly, the jury was entitled to find that both Amitrano and Jurlina aided defendant in his commission of the gang assault.

We find no merit to defendant's remaining contentions.

### *People v Mynin*

Defendant claims that the jury instruction was erroneous because, along with the gang assault charge, the judge instructed the jury that the case was governed by the accessorial liability standard.

■ The accomplice liability rules charged by the court were undisputedly relevant to the other counts against defendant. They were also relevant on the gang assault count as the jury could consider whether any of defendant's actions could be attributed to the codefendants who shared the intent to harm Moore. Furthermore, the judge explained to the jury that on the gang assault count, the jury was to consider the intent of the particular defendant. And when answering the jury notes, the judge clarified to the jury that the People need not prove that the other persons present and aiding defendant acted with the intent to cause physical injury. Thus, we find no error with the charge to the jury.

Accordingly, in each of the cases the order of the Appellate Division should be affirmed.

SMITH, J. (concurring). I join the majority opinion, but write separately to express my view on a question that opinion does not reach: whether any mens rea is required of an "aider" in a gang assault (*see* majority op at 566). I would answer that question yes. While the aider need not share the intent of the defendant, an innocent bystander—for example, one who inadvertently blocks the victim's path of escape—could not, in my view, be an aider. The Appellate Division opinion in *People v Green* (126 AD2d 105 [2d Dept 1987], *affd* 71 NY2d 1006 [1988]) and the dissenting opinion of Justice Silverman in *People v Hampton* (92 AD2d 490, 492 [1st Dept 1983], *affd* 61 NY2d 963 [1984]) suggest that the minimum mental state required of an aider should be that described in Penal Law § 115.00 (1), which says that a person commits criminal facilitation in the fourth degree when he acts "believing it probable that he is rendering aid . . . to a person who intends to commit a crime." I would not uphold a conviction for gang assault where the alleged aiders did not have at least that much culpability.

In the cases now before us, neither defendant asked the court to charge in the language of Penal Law § 115.00 (1). The charges that were given, however, did not permit the juries to convict defendants if the alleged aiders had no mens rea at all. In each case, the charge told the jury that an aider would not be "actually present" unless he were "ready, willing and able" to help defendant commit the crime. Willingness to help is a more culpable mental state than the mere belief that one is probably helping, and thus each of these defendants received a more favorable charge than I think he was entitled to.

JONES, J. (dissenting). I respectfully dissent and would reverse the orders of the Appellate Division. Both trial courts erred in not instructing the jury to make a finding that the persons who "aided" and were "actually present" had any degree of mental culpability. In my view, the gang assault statutes, sections 120.06 and 120.07 of the Penal Law, require that *all* members involved in the assault have the specific intent to cause physical injury—the lowest degree of mental culpability applicable to the crime of assault in any degree (*see* Penal Law art 120).

The gang assault statutes, which were added by the Laws of 1996, specifically recognize the danger posed by group assaults. The stated purpose of this legislation was "to enhance public safety by creating two assault crimes, gang assault in the first and second degrees, in recognition of the severity of assaults committed by gangs" (Senate Introducer's Mem in Support, at 1, Bill Jacket, L 1996, ch 647, at 6). Penal Law §§ 120.06 and 120.07 created more severe penalties, class B and C violent felonies, when assaults were committed by a person while "aided by two or more other persons actually present."

There is no dispute that an enhanced punishment is warranted because of the greater potential for harm and fear engendered by a group assault. Nevertheless, I do not agree that this crime is committed by a defendant when the persons who aided in the offense have no criminal intent—the position taken by the majority and the prosecution. My view is supported by the legislative history of the statutes (Governor's Program Bill Mem, at 2, Bill Jacket, L 1996, ch 647, at 7, 1996 NY Legis Ann, at 476 [In the bill sponsor's statement in support, it was noted that gang assaults are serious crimes, warranting enhanced punishment, because the "joint (or 'shared') action of numerous assailants is not only terrifying to victims but tends to increase the likelihood that severe or lethal injuries will be inflicted"]).

Moreover, the crime of gang assault must adhere to the basic principles of culpability defined in Penal Law § 15.05. It is axiomatic that culpable mental states must be proven together with an "actus reus" in order to constitute a crime. Further, the statutory mandate of Penal Law § 15.05 cannot be ignored by implication. In order to negate the requirement of mental culpability the Legislature would have to specifically include language in the statute and so declare (see e.g. Alweis v Evans, 69 NY2d 199, 204 [1987]).

Thus, the culpable mental states provided under the Penal Law cannot be presumed to have been written out of the gang assault statutes. To hold otherwise would subject a defendant to the enhanced level of assault without proof that the two or more other persons committed any act or had the appropriate mens rea to be convicted of any criminal offense. In other words, a defendant could be convicted of gang assault merely because there were uninvolved bystanders in the area or unwitting aiders.

Relying on the Appellate Division decision in People v Green (126 AD2d 105 [2d Dept 1987], affd on other grounds 71 NY2d 1006 [1988]), the majority takes the position that a person can be found guilty of gang assault when aided by another actually present even though that other person lacked any mental culpability. Green relies on the 1965 amendment to the robbery in the second degree statute in which the requirement that the aider be an "accomplice" (i.e., one with the same mental culpability as the primary actor) was replaced with the language "another person actually present" (Penal Law § 160.10 [1]).[1] The majority seems to conclude that the change in statutory language did away with the requirement that those charged with aiding need not have any mental culpability. In other words, if the primary actor had the necessary mental culpability it does not matter that a person alleged to be aiding and actually present had no culpable mental state. In discussing the statutory revision, however, the Green court stated as follows: "We find this revision significant and believe that it reflects an intention by the Legislature to permit a *much lesser degree of mental culpability to constitute aid under this robbery statute*" (*Green*, 126 AD2d at 110 [emphasis added]). By this language

---

1. I agree that the gang assault statutes, and specifically the phrase "aided by two or more other persons actually present," were modeled after the amended robbery in the second degree statute.

the court did not eliminate the requirement of a culpable mental state. Indeed, the court points out that all of the parties need not have the same degree of mental culpability, but should have the mental culpability appropriate to the commission of the underlying crime. In this respect, *Green* is not inconsistent with my position.

To the extent that *Green* suggests that the minimum culpable mental state required of an aider should be that of a person who commits criminal facilitation in the fourth degree (Penal Law § 115.00 [1]), I disagree. Criminal facilitation "is addressed to a kind of accessorial conduct in which the actor aids the commission of a crime with knowledge that he is doing so but without any specific intent to participate therein or to benefit therefrom" (Staff Notes of Temp St Commn on Rev of Penal Law and Crim Code, 1964 Proposed NY Penal Law [Study Bill, 1964 Senate Intro 3918, Assembly Intro 5376] art 115, at 328). Such conduct is generally "confined to preparation so attenuated from the final stages that the role of the facilitator is only remotely related as a cause or contributor to the ultimate crime" (*People v Beaudet*, 32 NY2d 371, 377 [1973]). Thus, contrary to the presence requirement of the aiders under the gang assault statutes, most persons charged with criminal facilitation are not present at the scene of the crime being facilitated. This point alone renders the offense of criminal facilitation inapplicable to the questions now before this Court. Based on the foregoing, the majority's and concurrence's reliance on *Green* is misplaced.[2]

The case that most accurately addresses the main issue before this Court is *People v Coleman* (5 AD3d 956, 958 [3d Dept 2004]). In *Coleman*, the court held that where a person is charged with robbery in the second degree, the person "aiding" must have "intent to aid . . . [in] stealing." That is, there needs to be a "shared intent" by two persons when one is charged with second-degree robbery. Likewise, where a defendant is

---

2. *People v Hedgeman* (70 NY2d 533 [1987]) and *People v Dennis* (75 NY2d 821 [1990]), two cases upon which the majority relies, are distinguishable from the cases at bar and, in any event, of no moment. Both cases involved robbery in the second degree and define "actually present" at the scene. In *Hedgeman*, this Court held that the defendant was guilty only of robbery in the third degree because the accomplice was not in proximity to the scene of the robbery. In *Dennis*, the defendant's conviction of robbery in the second degree was based upon the accomplice's testimony and the getaway driver's near presence at the robbery. On the contrary, the common issue in *Sanchez* and *Mynin* is what is the mental culpability of the aiders.

charged with gang assault, he/she must have a shared intent with the aiders. I now consider the cases before us.

In *Sanchez*, the trial court instructed the jury as follows:

> "[A] person is actually present when such person is in a position to render immediate assistance to a person participating in the assault and is ready, willing and able to do so irrespective of whether such person intended to cause physical injury.

> "Because of this definition of actually present, even if you find an individual defendant not guilty of this crime, because the People have not proven beyond a reasonable doubt that he had the intent required for the commission of the crime, you can still find another defendant or defendants guilty if you find that the not guilty defendant was actually present as I defined that term and that all the elements of the crime are proven by the People beyond a reasonable doubt."

These instructions were improper because under them, the jury could convict defendant of gang assault based solely on another defendant's presence. Stated differently, the *Sanchez* court instructed the jury that it could find a defendant guilty even if the other persons charged in the gang assault were found not guilty by reason of having no mental culpability. Moreover, the trial court's inclusion of the "ready, willing and able" language in the context of a criminal case is troubling in a number of respects. First, this language is typically used as a contract term, such as in a property conveyance. Second, and more significantly, using the "ready, willing and able" language to "instruct" a jury ensures a hopelessly indefinite charge because it contains no objective standard by which an alleged aider's conduct can be assessed. Without an objective standard, absurd results may occur. Thus, the *Sanchez* court's charge amounts to reversible error.

In *Mynin*, the trial court first instructed the jury on accomplice liability. The court stated: "To be criminally responsible as a person acting in concert with another person, the defendant must intentionally aid in the commission of the crime and act with the requisite culpable mental state for that offense." The court then instructed the jury on gang assault in the second degree, informing the jury that the instruction on gang assault was separate from its charge on acting in concert. In particular, the trial court stated that (1) the third element of gang assault

in the second degree is that defendant was aided by two or more persons actually present and (2) defendant could be convicted even if his aiders were found to have no mental culpability.

The *Mynin* court's instructions were clearly improper. Not only did the court give an incorrect charge regarding the mental culpability of aiders in a gang assault case, the *Mynin* instructions were confusing and contradictory (as evidenced by the numerous jury notes seeking clarification on the number of participants, whether all participants must have "shared intent," and what constitutes "aiding" versus "acting in concert").

In short, the trial courts in both *Sanchez* and *Mynin* erred when, among other things, they instructed the jury that it could find a defendant guilty even if the other persons charged in the gang assault were found not guilty by reason of having no mental culpability.

Further, the acquittal of the codefendants in *Mynin* effectively eliminated the "aided" requirement of the gang assault statutes and made it impossible to convict the remaining defendant of gang assault. The statutes unequivocally provide that at least three persons be involved in a gang assault. Therefore, one person may not be found singularly guilty of a crime which requires the participation of at least three (*see e.g. People v Palmer*, 135 AD2d 1103 [4th Dept 1987]; *People v Fallon*, 78 AD2d 659 [2d Dept 1980]).

Finally, if the majority's position is (1) they have not held "that no mens rea is required of an aider" and (2) they "have no occasion to define the exact intent needed" (majority op at 566), not only has the majority failed to provide guidance to the trial courts and bar as to the precise mental culpability of aiders in a gang assault context, they have not addressed the above stated deficiencies in the *Sanchez* and *Mynin* instructions.

For all of the foregoing reasons, both of these convictions should be reversed.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge SMITH concurs in a separate concurring opinion; Judge JONES dissents and votes to reverse in another opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

In each case: Order affirmed.